## STATE vs. HAROLD P. SMITH.

### JUNE 23, 1908.

PRESENT: Douglas, C. J., Dubois, Blodgett, Johnson, and Parkhurst, JJ.

(1)  *Automobiles.  Common Traveling Pace.  Constitutional Law.*

Gen. Laws cap. 74, § 5, as amended by Pub. Laws cap. 925, forbidding riding or driving in certain prescribed portions of the State *faster than a common traveling pace,* is not obnoxious to Cons. R. I. art. I, § 10, or to Cons. U. S. art. XIV of amendments, as the statute so defines the offence that a complaint brought under it charges the offence with sufficient clearness to protect the accused in his right to be informed of the nature and cause of the accusation against him, and he is not, on account of the uncertainty of the language, liable to be deprived of his liberty and property without due process of law.

CRIMINAL complaint.  Certified to Supreme Court on constitutional question.

JOHNSON, J.  This is a criminal complaint founded upon General Laws cap. 74, § 5, as amended by Public Laws cap. 925, which is as follows:

"Section 5.  Every person who shall ride or drive faster than a common traveling pace in any of the streets of Newport or Providence or in the compact part of any town or village in the state, or in any road leading from Pawtuxet to the compact part of Providence, shall, unless justifiable cause be made to appear for such riding or driving, be fined not less than five dollars nor more than twenty dollars or imprisoned not exceeding ten days for each offence;  one-half of said fine to the use of the complainant and one-half thereof to the use of the town where the offence was committed."

The complaint charged that "at Providence, in said County, on the 13th day of May, A. D. 1907, with force and arms, Harold P. Smith of said Providence, did ride and drive an automobile faster than a common traveling pace, in one of the streets of said Providence, to wit, on Broad Street, against the statute."

In the Superior Court the respondent filed a motion to dismiss, and among the causes for the motion claimed that the

statute upon which the complaint was founded was obnoxious to section 10 of article I of the constitution of Rhode Island and to article XIV of the amendments to the constitution of the United States. The Superior Court thereupon certified the cause to this court upon the following constitutional questions:

"1. Is Section 5 of Chapter 74 of the General Laws as amended by Chapter 925 of the Public Laws in conflict with Section 10 of Article I of the Constitution of Rhode Island,—

"(a) in that the accused in a complaint brought under that statute is not informed of the nature and cause of the accusation against him, and

"(b) in that the accused in a complaint brought under that statute is, on account of the uncertainty of the language thereof, liable to be deprived of his. liberty and property without due process of law?

"2. Is Section 5 of Chapter 74 of the General Laws as amended by Chapter 925 of the Public Laws in conflict with Article XIV in addition to and amendment of the Constitution of the United States in that the accused in a complaint brought under that statute is, on account of the uncertainty of the language thereof, liable to be deprived of his liberty and property without due process of the law."

The material parts of the constitutional provisions in question are as follows:

Article 1, section 10, constitution of Rhode Island: "In all criminal prosecutions, the accused shall enjoy the right to . . . . be-informed of the nature and cause of the accusation; . . . nor shall he be deprived of life, liberty, or property, unless by the judgment of his peers, or the law of the land."

Article XIV, section 1, amendments to the constitution of the United States, . . . "nor shall any state deprive any person of life, liberty, or property, without due process of law."

It is urged by counsel for the respondent (1) that the statute is vague and fails to apprise the respondent with certainty of the crime denounced in violation of the provisions of the state

constitution, and (2) that on account of the uncertainty of the language the respondent is liable by reason of the enactment to be deprived of his liberty and property without due process of law, in violation of the provisions of both the State and federal constitutions.

Counsel argue that the standard of speed is uncertain, and will vary with the location and with the different vehicles in common use in different localities; that in some localities the standard might be furnished by ox-drawn vehicles capable of no greater speed than three miles an hour; in some the common traveling pace might be that of vehicles drawn by slow horses; in others that of vehicles drawn by speedy trotting horses; while in others the common traveling pace might well be that of mechanically drawn vehicles with an average speed of twenty-five, thirty, or even fifty miles an hour.

The legislation in Rhode Island upon this subject is instructive. The first act upon the subject was passed by the General Assembly at the May session, 1666:

"An Act, to prevent excessive Riding in any of the Streets or highways of the Towns of *Newport* and *Providence*.

"Whereas several Persons have had their Bones Broke, and received other Damages, by excessive Riding in the Streets or Highways of the Towns of Newport and Providence,

"For the preventing whereof in the future,

"Be it Enacted by the General Assembly, and by the Authority of the same, That whosoever shall Ride faster than a common Travelling pace, in any of the Streets or Highways, of the Town of Newport, or shall Ride a Gallop, in the Streets or Highways of the Town of Providence, shall for every such Offence, Forfeit *Five Shillings*," etc.

The statute appears in the same form in 1730. In the revision of 1766 the words "common travelling pace," were extended to cover riding in the streets of Providence. The provisions of the act were also extended to cover other portions of the colony therein described. The statute has remained in substantially the same form in the revisions of 1798 (p. 537), 1822 (p. 498), 1844 (p. 332), 1857 (cap. 47, § 5), 1872 (cap. 62, § 5), 1882 (cap. 66, § 5), and 1896 (cap. 74, § 5), covering a

period, in colony and State, of two hundred and forty-two years. The preamble of the act of 1666 is illuminating as to the reasons for its passage. It is clearly evident that the safety of the traveling public was the object sought by the act. Such safety could not be obtained by permitting each vehicle, each horse or other thing, which could be ridden or driven, to go at the traveling pace possible to it. There could not be, with safety to the traveling public, on foot, on horseback, or in carriages, a traveling pace for each individual who rode in the streets or highways, fixed only by the rate of speed possible to the animal or thing which he rode or drove. Safety could be attained only by requiring all to use that prudence and caution in the matter which was ordinarily used by prudent and reasonable men when driving in the streets or highways of thickly settled towns, that is, a pace which was reasonable and proper considering the place and circumstances; a pace which was ordinary; a pace which was recognized by reasonable men as a common traveling pace. The statute provided a penalty for riding faster than such common traveling pace in the streets of Newport and Providence, and the language of the provision has remained substantially unchanged through all the revisions of the statutes.

The question of the constitutionality of the statute is now raised for the first time. The statute was considered by this court in *State* v. *Thurston*, 28 R. I. 265. The question there, however, was upon the validity of an ordinance of the town of Warwick which attempted to regulate the speed of motor cars on the streets and highways in the compact part of said town.

The court held that the language of the statute was broad enough to include automobiles when ridden or driven, and that the ordinance was in conflict with said statute and invalid, since it assumed to regulate the speed of motor cars on the public streets and highways of the town of Warwick in the compact portion of the town. At page 268 Mr. Justice Dubois said: "The language used in this section is exceedingly broad: 'Every person who shall ride or drive faster than a common travelling pace.' The words 'ride or drive' are not confined

to animals; they are not limited in any manner whatsoever. Anything capable of being ridden or driven comes within the purview of the act. It is argued that the words 'ride or drive' are apt words in a statute designed to limit the fast driving of horses upon the highways of the State. They are apt, but they are not restricted to horses by the terms of the section. They are also apt in the case of bicycles, motor cycles, or automobiles when ridden or driven. In construing statutes of this kind it is usual and proper to consider the scope and purpose of the act and the danger or mischief that it was intended to guard against. The act was evidently passed for the protection of the public against the dangers incident to fast riding and driving of any sort at the time, but also any kind of dangerous riding or driving."

(1)     We think that the words *common traveling pace* had a clear and well-understood meaning when the original statute was enacted, and that they have continued to have, and now have, such meaning. The statute defines the offence with sufficient clearness. A complaint brought under it that one drove or rode at a speed greater than a common traveling pace charges the offence with sufficient clearness to protect the accused in his right to be informed of the nature and cause of the accusation against him; and he is not, on account of the uncertainty of the language of the statute, liable to be deprived of his liberty and property without due process of law. As the uncertainty of the words "shall ride or drive faster than a common traveling pace" is the sole objection urged by the respondent, our conclusion is that the questions certified must be answered in the negative.

The papers in the cause will be sent back to the Superior Court, with our decision certified thereon.

*William B. Greenough, Attorney-General, and Harry P. Cross, 2d Assistant Attorney-General,* for State.

*Cyrus M. Van Slyck and Frederick A. Jones,* for defendant.