## Shod McLeroy v. The State.

### No. 8282.   Decided April 16, 1924.

#### 1.—Manufacturing Intoxicating Liquor—Continuance—Want of Diligence.

Where the application for continuance showed a total lack of diligence in procuring process for the witnesses, and also such lack of knowledge of the whereabouts of the witnesses as to make it improbable that any kind of diligence could have secured their presence, or that same could ever be secured by a continuance, there is no error in overruling same.

#### 2.—Same—Requested Charge—Alibi.

Where the court's main charge sufficiently instructed the jury upon the issue of alibi, there is no reversible error in refusing a requested charge thereon.

#### 3.—Same—Sufficiency of the Evidence.

Where, upon trial of unlawfully manufacturing intoxicating liquor, the evidence sustained the conviction, there is no reversible error, although there was conflicting testimony.

Appeal from the District Court of Rains.   Tried below before the Honorable Geo. B. Hall.

Appeal from a conviction of unlawfully manufacturing intoxicating liquor; penalty, one year imprisonment in the penitentiary.

The opinion states the case.

*Rodes & Carter*, for appellant.

*Tom Garrard*, Attorney for the State and *Grover C. Morris*, Assistant Attorney for the State.

LATTIMORE, JUDGE.—Appellant was convicted in the District Court of Rains County of manufacturing intoxicating liquor, and his punishment fixed at one year in the penitentiary.

There are a number of bills of exception in the record each of which has been carefully examined by us. The only one deemed worth while to discuss is that complaining of the refusal of a continuance. Appellant was indicted on the 10th of May 1923 and tried on July 12th of said year. He asked a continuance because of the absence of Cloud Turner, Efton Turner and Travis Schrimsher. It is stated in the application for continuance that appellant was arrested the same day the indictment was returned, and that he made bond two or three days later. The first process issued on behalf of appellant was July 3rd, which appears from the qualification to this bill of exceptions to have been the day set apart for taking up all criminal cases. The application presented to the clerk on behalf of

appellant asking for process for the three witnesses named in the motion for continuance, states the residence of each of them to be unknown. It would appear plain that if the appellant did not know the residences of the witnesses and could not make such residence known to the clerk who issued the process, little effective effort could be made by the officers in procuring the presence of said witnesses. The application for subpoena stating the residences of said witnesses to be unknown to the appellant was first filed on June 9th. On July 3rd another application for subpoena was filed alleging the residence of the two Turners to be in Rains county and that of Schrimsher in Hopkins county. The case was re-set on July 3rd for July 12th. On the latter date the process for the Turners had not been returned, and the process for Schrimsher was returned not found. We observe in the statement of facts that witnesses for appellant who knew the Turners stated that they had gone and said witnesses did not know the point to which they had moved. Appellant himself testified that he did not know where Schrimsher was; that Schrimsher told him he was going to Hopkins county and try to find out where his sister was living and that he was going to her. These statements made by us show a total lack of diligence on the part of appellant in procuring process for his witnesses, and further so indicate such lack of knowledge of the whereabouts of said witnesses as to make it improbable that any kind of diligence could have secured their presence or that same could ever be secured by a continuance. We further observe from the statement of facts that substantially the same testimony expected from Schrimsher, was available from two other witnesses who are shown by the testimony for the defense to have been present on the same occasion and at the same time and place as Schrimsher. No effort seems to have been made to obtain the testimony of the two witnesses referred to.

We further mention the complaint of appellant at the refusal of a special charge upon alibi. The court told the jury upon this phase of the case that if they had a reasonable doubt of the presence of the defendant at the time and place of the manufacture of the liquor as alleged in the indictment, they should acquit. In our opinion this gave to him the entire benefit of a charge on alibi and presented this phase of the case as pointedly as did the special charge refused. Appellant and one Kearney lived about two hundred yards apart, the home of the latter being east of that of appellant. Appellant owned a broad tired wagon, according to his own testimony there being but one other wagon of that kind anywhere in the neighborhood. On the night of the 28th of February 1923 a party of officers searching in the neighborhood of appellant for stills, followed the track of a broad tired wagon going from the direction of appellant's house past Kearney's down to a point in the woods where the wagon turned around. At this point the officers detected the odor of mash or liquor

and a search revealed the presence of a number of barrels of mash, and a still from which whisky was dripping, a fire composed of a few chunks being still warm under it. This was found about 2:00 a. m. on the morning of March 1st. The searching party went away and got breakfast and returned before daylight. They secreted themselves and about 8:30 or 9 o'clock appellant and Kearney were observed coming to the still. According to the testimony of the witness who was nearest them, each of them had a bridle in his hand. They went to the still and poured its contents into a tub and then · emptied the tub into a barrel. Witnesses said they then put into the barrel other material which they stirred with a hoe or other implement. They then also began to take the still apart, appellant taking various parts and secreting same at near by points. He took a fruit jar whose contents were found later to be whisky and hid it under some leaves in a little ditch. Mr. Bullock, who was one of the officers nearest to appellant, said that while Kearney was mixing up the mash and bringing some water, appellant would take one piece of the still and hide it and then another and hide it and then another and hide it. He said that in carrying the mash from the pot and pouring it into the barrel both men acted together. They both poured the mash into a tub and took the tub and emptied it into a barrel. This witness said that when appellant and Kearney started away from the place appellant had the pot (meaning the container of the still) and Kearney had some bridles and the worm of the still. When appellant and Kearney started away the officers went after them, whereupon the appellant dropped his pot and fled as did also Kearney. The two men were captured together in the woods on the following Saturday. The officers testified that they had been searching for them and had been to appellant's house a number of times but had been unable to find them or get information of their whereabouts. The testimony further showed that there were a number of tracks made by a wide tired wagon at the place where the still was located. A search around the place where the still was disclosed other jars of whisky. The land on which the still was located did not belong either to Kearney or appellant, and the still was about four hundred yards from Kearney's and about six hundred yards from appellant's. There is nothing in the record to indicate any participation by the owner of any other wide tired wagon, or of any other persons save Kearney and appellant.

The defensive theory was that appellant was working on the farm of Mr. Edwards on the 28th of February with the Turners and that he spent the night at home in a room with Houston, Hill and Schrimsher. His wife testified that she slept in an adjacent room. Appellant said that he left his house early the next morning with some bridles to look for his horses and went by Kearney's house and the latter accompanied him on the search; that they went down the road

south from Kearney's house and then east and were coming up through the woods when they ran up on a still. He said that Kearney asked him to help tear the still down, that he had to move it. He said he did not know the still was there and never had seen it before. The court fully submitted the law, in our opinion, as applicable to the defensive issues and the jury have solved the issues of fact adversely to appellant.

Finding nothing in the record to indicate that appellant has not had a fair trial and believing the evidence to support the conclusion reached by the jury, an affirmance will be ordered.

*Affirmed.*