State of Iowa, appellant, v. Cecil Fred Coppes, appellee.

No. 48966.

(Reported in 78 N.W.2d 10)

1058

July 26, 1956.

Dayton Countryman, Attorney General, Raphael R. R. Dvorak, Assistant Attorney General, and William S. Cahill, County Attorney, for appellant.

Pryor, Hale, Plock, Riley & Jones, of Burlington, for appellee.

BLISS, J.—Defendant's demurrer was on the following grounds:

"1. That the statute (section 321.285, Iowa Code of 1954) upon which the information is based so far as it undertakes to create a criminal offense is void in that the statute does not expressly forbid or require any act except by implication.

"2. If any act is required or forbidden thereby then the statute is not sufficiently explicit to inform those who are subject to it what conduct will render them liable to its penalties and form the basis for a criminal action.

"3. That the information does not charge the said defendant with any crime."

Section 321.285 of the 1954 Code of Iowa provides:

"Speed restrictions. Any person driving a motor vehicle on a highway shall drive the same at a careful and prudent speed not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway and of any other conditions then existing, and no person shall drive any vehicle upon a highway at a speed greater than will permit him to bring it to a stop within the assured clear distance ahead, such driver having the right to assume, however, that all persons using said highway will observe the law.

"The following shall be the lawful speed except as hereinbefore or hereinafter modified, and any speed in excess thereof shall be unlawful:

"1. Twenty miles per hour in any business district.

"2. Twenty-five miles per hour in any residence or school district.

"3. Forty miles per hour for any motor vehicle drawing another vehicle.

"4. Forty-five miles per hour in any suburban district.***."

Section 321.291 of the 1954 Iowa Code provides that in every charge of violation of sections 321.285 to 321.287 inclusive, the information, also the notice to appear, shall specify the alleged speed driven by the defendant, and also the speed limit applicable in the district or at the location of the violation.

Section 321.482 of said Code under the heading "CRIMINAL RESPONSIBILITY" provides: "Penalties for misdemeanor. It is a misdemeanor for any person to do any act forbidden or to fail to·perform any act required by any of the provisions of this chapter unless any such violation is by this chapter or other law of this state declared to be a felony. * * *." The remainder of the section provides the penalty for conviction of a misdemeanor under this chapter shall be punishment by a fine of not more than one hundred dollars or by imprisonment for not more than thirty days.

All of the Code sections above noted are found in chapter 321 of the 1954 Iowa Code, entitled "Motor Vehicles And Law Of The Road", containing 512 sections. The provisions in the chapter were enacted by the Forty-seventh General Assembly in chapter 134 of its Acts, entitled "Motor Vehicle Law", approved April 19, 1937. It repealed chapter 251 of the 1935 Code of Iowa, entitled "Motor Vehicles And Law Of Road", and all amendments thereto. Section 321.285 of the 1954 Code was section 316 of said chapter 134 of the laws of the Forty-seventh General Assembly.

The trial court, in its ruling sustaining the demurrer, ably discusses the matters involved. The contentions of defendant in support of the demurrer, as noted in the court's ruling, in substance, were: (1) The Legislature, in the exercise of its power to define or declare crimes, must inform those subject thereto with reasonable precision what it intends to prohibit, so that the accused may have a certain understandable rule of conduct that he may know what acts he shall avoid. He also urged that statutes creating criminal offenses must be strictly construed in favor

of the one charged. In support of his position he cited State v. Brighi, 232 Iowa 1087, 7 N.W.2d 9; 14 Am. Jur., Criminal Law, 773, section 19. (2) Section 321.285 does not expressly forbid nor require any act except by implication. Cited in support are Thornbury v. Maley, 242 Iowa 70, 45 N.W.2d 576; Ellis v. Robb, 242 Iowa 875, 47 N.W.2d 246; State v. Brighi, supra. (3) Section 321.285 is not sufficiently explicit to inform those who are subject to it what conduct will render them liable to its penalties.

I. The propositions urged by defendant are such that they may be considered together.

The charge against defendant was not by an indictment nor a county attorney's information, but was designated simply an "information." It was subscribed and sworn to before the trial court by an individual, apparently as a private prosecutor.

Section 773.3 of Iowa Code 1954 provides that a criminal indictment is sufficient if it charges the accused in one or more of the following ways: 1. By using the name given to the offense by statute. 2. By stating so much of the definition of the offense, either in terms of the common law or of the statute, or in terms of substantially the same meaning, "as is sufficient to give the court and the accused notice of what offense is intended to be charged." 3. The indictment may refer to the statutory provision creating the crime charged, and regard may be had to such reference in determining the validity or the sufficiency of the charge.

Code section 773.4 provides that no indictment, charging an offense as provided in section 773.3, supra, "shall be held to be insufficient on the ground that it fails to inform the defendant of the particulars of the offense."

 While the accusation against defendant was by an information and not by an indictment, the rules as to the sufficiency of the charge are in accord with those applying to the statutory indictment.

 II. The general rule respecting the sufficiency of the statement of statutory crimes—and there are no others in Iowa— is well expressed in Connally v. General Construction Co., 269 U. S. 385, 391, 392, 46 S. Ct. 126, 127, 70 L. Ed. 322, to wit: "That the terms of a penal statute creating a new offense must

be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. International Harvester Co. v. Kentucky, 234 U. S. 216, 221, 34 S. Ct. 853, 58 L. Ed. 1284, 1287."

There is no controversy over the soundness of this legal principle. As said in 14 Am. Jur., Criminal Law, section 19, pages 773, 774: "The legislature, in the exercise of its power to declare what shall constitute a crime or punishable offense, must inform the citizen with reasonable precision what acts it intends to prohibit, so that he may have a certain understandable rule of conduct and know what acts it is his duty to avoid. * * * It is axiomatic that statutes creating and defining crimes cannot be extended by intendment. Purely statutory offenses cannot be established by implication. There can be no constructive offenses. Before a man can be punished, his case must be plainly and unmistakably within a statute."

This language was quoted with approval in State v. Brighi, supra, 232 Iowa 1087 at page 1090.

In 25 R. C. L., Statutes, section 62, page 810, referring to this fundamental rule governing the validity of a statute, it is stated that if it is couched in language "so vague, indefinite and uncertain that the courts are unable to determine, with any reasonable degree of certainty, what the legislature intended, or is so incomplete or is so conflicting and inconsistent in its provisions that it cannot be executed, it will be declared to be inoperative and void."

We mention but a few of the numerous supporting authorities: United States v. Capital Traction Co., 34 App. D. C. 592, 19 Ann. Cas. 68; 26 Am. & Eng. Ency. Law, Second Ed. 656; Diemer v. Weiss, 343 Mo. 626, 122 S.W.2d 922, 923; Tozer v. United States, 52 F. 917, 919, 4 Inters. Com. Rep. 245, stating: "But, in order to constitute a crime, the act must be one which

the party is able to know in advance whether it is criminal or not. The criminality of an act cannot depend upon whether a jury may think it reasonable or unreasonable. There must be some definiteness and certainty."

In State v. Anthony, 179 Ore. 282, 288, 169 P.2d 587, 590, the court said: " 'A valid criminal law must definitely show with reasonable certainty what acts or omissions the lawmaking body intended to prohibit and punish: 1 Cyclopedia of Criminal Law, Brill, §62. But reasonable definiteness in view of the conditions is all that is required.' " (Citing in addition to Oregon cases, Ex parte Lockett, 179 Cal. 581, 178 P. 134; Guetling v. State, 198 Ind. 718, 153 N.E. 765.)

III. While the courts are in agreement as to the principle of law stated in the division just preceding, the great difficulty has been in its application, because of the diversity of statutes submitted for construction and interpretation and the necessity of recognizing other equally important rules of law. There are, therefore, a host of court decisions involving the determination of the sufficiency or insufficiency of statutory definitions or designations of criminal offenses, and they are far from harmonious. These decisions on the controversial matter are of little help in the instant case because of the differences in the statutes and the pertinent facts, but we mention a few of them as illustrative of the problem involved. Among the cases in which the challenges against the statute have been upheld are the following: An often-cited case is United States v. L. Cohen Grocery Co., 255 U. S. 81, 41 S. Ct. 298, 300, 65 L. Ed. 516, 14 A. L. R. 1045, involving a federal statute prohibiting any unjust or unreasonable charges in dealing with any necessaries. It was held there was no ascertainable standard of guilt. State v. Harrison, 130 W. Va. 246, 43 S.E.2d 214, 218, the mayor of a city was charged with violating a statute against secreting public records, by refusing to permit a councilman to see a "docket." It was held the latter description was too indefinite. Lanzetta v. New Jersey, 306 U. S. 451, 59 S. Ct. 618, 83 L. Ed. 888, 889, involving a statute making it a crime to be a member of a "gang." Connally v. General Construction Co., supra, a statute prohibiting less than current wages. United States v. Capital Traction Co., supra, statutory

prohibition of operating crowded streetcars. Herndon v. Lowry, 301 U. S. 242, 57 S. Ct. 732, 81 L. Ed. 1066, prohibition against attempts to induce others to join in resistance to lawful authority. Champlin Refining Co. v. Corporation Commission, 286 U. S. 210, 52 S. Ct. 559, 560, 76 L. Ed. 1062, 86 A. L. R. 403 (statute prohibiting unreasonable charges). Tozer v. United States, 52 F. 917 (statute providing it was unlawful for any common carrier to give undue preference to any shipper). Louisville & Nashville R. Co. v. Commonwealth, 99 Ky. 132, 35 S.W. 129, 33 L. R. A. 209, 59 Am. St. Rep. 457 (a statute making it a crime for a railway company to charge more " 'than a just and reasonable rate' "). Stoutenburgh v. Frazier, 16 App. D. C. 229, 48 L. R. A. 220 (statute for the punishment of vagrants, idlers, and " 'all suspicious persons' "). Ex parte Slaughter, 92 Tex. Crim. Rep. 212, 243 S.W. 478, 26 A. L. R. 891 (statute prohibiting any motorist to drive at greater than a specified speed where the territory contiguous to the highway is " 'closely built up' ").

Likewise there are many decisions upholding criminal statutes in which the statutory designation of the offenses was challenged as being too general or indefinite. In State ex rel. Pearson v. Probate Court, 205 Minn. 545, 287 N.W. 297, a Minnesota statute, providing that persons having a " 'psychopathic personality' " should be committed under procedure relating to insane persons, was upheld by the Minnesota court and sustained in 309 U. S. 270, 60 S. Ct. 523, 525, 84 L. Ed. 744, 126 A. L. R. 530. The Sherman Anti-Trust Act, 15 U. S. C. A., sections 1 to 7, was upheld in Northern Securities Co. v. United States, 193 U. S. 197, 318, 24 S. Ct. 436, 449, 48 L. Ed. 679, despite the generality of the prohibition against " 'every contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade.' " In People v. Dow, 155 Mich. 115, 118 N.W. 745, a statutory prohibition against driving automobiles in excess of a specified speed " 'in the business portion' " of cities was held not so uncertain and indefinite as to render it void as a violation of constitutional due process of law. In State v. Carr, 151 Kan. 36, 98 P.2d 393, 394, it was held that a statute providing that " 'any person who shall knowingly and willfully commit any irregularity or fraud whatever with the intent to hinder, prevent or defeat

a fair expression of the popular will' * * * 'shall be deemed guilty of a felony' " did not contravene any provision of the Constitution of Kansas or of the United States, because of vagueness. In State v. Rogers, 142 Kan. 841, 843, 52 P.2d 1185, 1186, a statute with reference to the allowance of claims using the phrase " 'according to the legal or ordinary compensation or price' " was held not so vague or indefinite as to subject it to condemnation as being unconstitutional, since the word "ordinary" was held to have a common and accepted meaning. The ruling in the Rogers case in a like matter was adhered to in State v. Millhaubt, 144 Kan. 574, 61 P.2d 1356, in which case certiorari to the United States Supreme Court was denied in Millhaubt v. Kansas, 301 U. S. 701, 57 S. Ct. 931, 81 L. Ed. 1356, and rehearing was denied in 302 U. S. 773, 58 S. Ct. 5, 82 L. Ed. 599. Alabama State Federation of Labor v. McAdory, 325 U. S. 450, 470, 65 S. Ct. 1384, 1393, 1394, 89 L. Ed. 1725, construed a statute imposing general and indefinite regulations upon labor unions. The court in holding there was no merit in the contention that the statute was unconstitutional because of the broad provisions said: "State Courts, when given the opportunity by the presentation to them for decision of an actual case or controversy, may, and often do, construe state statutes so that in their application they are not open to constitutional objections which might otherwise be addressed to them."

IV. Courts are very reluctant to declare invalid legislative enactments. And this attitude has the support of sound authority. Lewis Sutherland, Statutory Construction, Second Ed., Volume 2, page 729, lays down the following rule: "A presumption is always indulged in favor of the constitutionality of an act, and that construction will be adopted which will sustain the act, where the language used will permit such interpretation."

In Ex parte Frye, 143 Tex. Cr. Rep. 9, 13, 156 S.W.2d 531, 533, it is stated: "Every presumption is in favor of the constitutionality of an act of the legislative body of a state and the courts will not declare it invalid unless, in their judgment, it clearly and unmistakably comes within the inhibition of the Constitution." See 1 Cooley's Constitutional Limitations, Eighth

Ed., 371; Black's Constitutional Law, Third Ed., 68, section 39; Graves v. Minnesota, 272 U. S. 425, 47 S. Ct. 122, 71 L. Ed. 331; 11 Am. Jur. 792, section 130; Fort Smith Light & Traction Co. v. Board of Improvement, 274 U. S. 387, 47 S. Ct. 595, 71 L. Ed. 1112.

In State v. Andrews, 108 Conn. 209, 213, 142 A. 840, 841, the court said: "In most jurisdictions statutes will not be held void for uncertainty if a practicable or sensible effect may be given to them. 3 Blashfield, Cyclopedia of Automobile Law, p. 2045, §3. So, statutes prohibiting an unreasonable rate of speed are generally sustained. Ex parte Daniels, 183 Cal. 636, 192 P. 442; 21 A. L. R. 1172; People v. Beak, 291 Ill. 449, 126 N.E. 201; Gallaher v. State, 193 Ind. 629, 141 N.E. 347, 29 A. L. R. 1059; State v. Schaeffer, 96 Ohio St. 215, 117 N.E. 220, L. R. A. 1918B 945, Ann. Cas. 1918E 1137; Huddy on Automobiles (8th Ed.) p. 57, §63. In Massachusetts, a statute has been sustained which makes it an offense to drive so as to endanger the lives or safety of the public. Commonwealth v. Pentz, 247 Mass. 500, 143 N.E. 322. Statutes prohibiting reckless driving, or driving at a rate of speed which was unreasonable, under all the conditions, are very generally and by the great weight of authority, upheld. Huddy on Automobiles (8th Ed.) p. 408, §394 and p. 1052, §892." The holding in State v. Andrews, supra, was approved in State v. Zazzaro, 128 Conn. 160, 20 A.2d 737, 741.

In State ex inf. Crow v. West Side Street Ry. Co., 146 Mo. 155, 167, 168, 47 S.W. 959, 961, the court said: "A statute cannot be held void for uncertainty, if any reasonable and practical construction can be given to its language. Mere difficulty in ascertaining its meaning or the fact that it is susceptible of different interpretations will not render it nugatory. Doubts as to its proper construction will not justify us in disregarding it. It is the bounden duty of the courts to endeavor by every rule of construction to ascertain the meaning of, and to give full force and effect to, every enactment of the general assembly not obnoxious to constitutional prohibitions."

As said in State v. Anthony, 179 Ore. 282, 301, 169 P.2d 587, 595: "After the process of construction has been accomplished, the decisions still admonish that we should indulge every

presumption in favor of validity and declare no act of the legislature void unless invalidity be shown beyond a reasonable doubt. Sinking Fund Cases, 99 U. S. 700, 25 L. Ed. 496, 504; Ogden v. Saunders, 12 Wheat. 213, 6 L. Ed. 606, 625; The Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L. Ed. 629, 656."

Such has been the position of this court. In State v. Dvoracek, 140 Iowa 266, 271, 118 N.W. 399, 400, defendant was charged with violating a statute in willfully neglecting his wife and children "in a destitute condition." Defendant's motion for a directed verdict was sustained. In reversing the court said: "It was also suggested in the motion that the words 'in destitute condition' were not sufficiently definite. We apprehend that little difficulty will be experienced in ascertaining their meaning, and legislation properly cannot be brushed aside if susceptible to any reasonable construction which will support it. Wentworth v. Racine Co., 99 Wis. 26, 74 N.W. 551. The situation of a person in a destitute condition is well understood, as are also the expressions with reference to maintaining or providing for wife and children. Said terms employed are as definite as in the nature of the offense were possible."

In Gallaher v. State, supra, 29 A. L. R. 1059–1066, the appellant was convicted of the violation of that part of the Motor Vehicle Law which provided that no person shall operate a motor vehicle upon any public highway at a speed greater than is reasonable or prudent, having regard to the traffic and the use of the way or so as to endanger life or limb or injure the property of any person. In affirming the judgment the Indiana court said at page 641 of 193 Ind., page 351 of 141 N.E.: "We conclude that the statute * * * taken as a whole, defines the offense forbidden by it with certainty to the degree that persons who read it may know exactly what evil is intended to be prohibited, and fixes a standard of guilt by which an accused person may know the nature and cause of the accusation against him." The opinion cites and discusses like holdings in numerous cases involving penal provisions in motor vehicle statutes.

In Smith v. State, 186 Ind. 252, 257, 115 N.E. 943, 945, it

is stated: "The statute must be considered in its entirety * * * and when so considered, it clearly fixes a standard of care to be observed by the operator, having regard to the location of the highway on which he is driving at the time." As noted in Ratcliff v. State, 106 Tex. Cr. App. 37, 289 S.W. 1072, 1074, the particular section under consideration must be read and considered in connection with the whole enactment.

In State v. Ashton, 175 Kan. 164, 262 P.2d 123, appellant was convicted of operating an automobile on a public highway in negligent disregard of the safety of others, resulting in the death of his passenger. He argued that the statute was too indefinite and uncertain to specifically inform a person of what was prohibited, and failed to specify the detailed acts or omissions constituting " 'negligent disregard of the safety of others'." In answer the court said at pages 170, 171 of 175 Kan., pages 128, 129 of 262 P.2d: "It is clear the legislature did not attempt to specify in detail the innumerable and variable circumstances, conditions, acts and omissions from which death might result from vehicular traffic. It undertook to enact a statute sufficiently broad to encompass negligent acts and omissions of all kinds and character from which death ensued when committed in disregard of the safety of others. It is a police measure designed to protect the public from the constantly mounting death toll resulting from vehicular traffic. In order to prevent or decrease these direful results the law, of necessity, had to be broad and general in its reach."

Quoting from State v. Carr, 151 Kan. 36, 42, 98 P.2d 393, 397, the court said: " 'We are of opinion that the purpose of the statute was not so much *to denounce certain specific acts as to prevent a certain result.*' "

In Commonwealth v. Pentz, 247 Mass. 500, 506, 143 N.E. 322, 324, a very similar statute was held constitutional when attacked for indefiniteness and uncertainty. The court said, in part: "By its terms 'whoever upon any way * * * operates a motor vehicle so that the lives or safety of the public might be endangered' is made subject to punishment. The operation of an automobile upon a way is a clearly defined act, susceptible of being easily understood. Its operation so as not to endanger

the lives or safety of the public *is the description of a fact.* While it may not be easy to formulate in words a comprehensive definition of that fact applicable to all cases, it is not difficult to comprehend with some approach to accuracy the thought conveyed by the description of that fact. Negligence of varying degrees has been made the basis of indictment under numerous statutes."

Continuing, the Kansas court, in State v. Ashton, said at page 172 of 175 Kan., pages 129, 130 of 262 P.2d:

"Manifestly, no legislature could accurately anticipate every possible circumstance or contingency which might arise and legislate specifically concerning it. That would be true concerning speed and all other factors which might become involved in highly dissimilar situations. * * * Some offenses admit of much greater precision and definiteness than others and where possible statutes always should be framed with reasonable certainty. Reasonable and not mathematical certainty is what the law requires. *It appears the instant statute is about as definite and certain as the subject matter, the evil sought to be remedied, permits. That is the real test.* Under such circumtances a police measure enacted for the safety of the public will not be nullified on the ground of constitutional invalidity. [Italics ours.]

"That traffic statutes based on general provisions prohibiting negligent, careless, reckless or willful and wanton conduct in disregard of the safety of others do not contravene the constitutional guarantee of due process or the tenth section of our bill of rights by reason of indefiniteness or uncertainty is established by the overwhelming weight of authority [citing authorities]."

In chapter 123 on criminal liability in the use of highways, 8 Blashfield's Cyclopedia of Automobile Law and Practice, Perm. Ed., section 5307, pages 111, 112 states: "Though not always so held, statutes making it a penal offense to drive at an unreasonable rate of speed are generally sustained, especially where the statute further provides what rate of speed shall be deemed reasonable", citing in support thereof: State v. Campbell, 82 Conn. 671, 74 A. 927, 135 Am. St. Rep. 293, 18 Ann. Cas. 236;

Ziegler v. District of Columbia (Mun. Ct. App.) 71 A.2d 618; People v. Camberis, 297 Ill. 455, 130 N.E. 712; People v. Beak, supra, 291 Ill. 449, 126 N.E. 201; People v. Lloyd, 178 Ill. App. 66; Damron v. State, 193 Ind. 703, 141 N.E. 346; Commonwealth v. Pentz, supra, 247 Mass. 500, 143 N.E. 322; Commonwealth v. Cassidy, 209 Mass. 24, 95 N.E. 214; State v. Goldstone, 144 Minn. 405, 175 N.W. 892; State v. Waterman, 112 Minn. 157, 127 N.W. 473; Schultz v. State, 89 Neb. 34, 130 N.W. 972, 33 L. R. A., N. S., 403, Ann. Cas. 1912C, 495; State v. Schaeffer, supra, 96 Ohio St. 215, 117 N.E. 220, L. R. A., 1918B 945, Ann. Cas. 1918E 1137; State v. Randall, 107 Wash. 695, 182 P. 575; Maxon v. State, 177 Wis. 379, 187 N.W. 753, 21 A. L. R. 1484; Mulkern v. State, 176 Wis. 490, 187 N.W. 190. Contra: Howard v. State, 151 Ga. 845, 108 S.E. 513; Hayes v. State, 11 Ga. App. 371, 75 S.E. 523; Ex parte Carrigan, 97 Tex. Cr. R. 309, 244 S.W. 604; Ex parte Slaughter, 92 Tex. Cr. R. 212, 243 S.W. 478, 26 A. L. R. 891; State v. Lantz, 90 W. Va. 738, 111 S.E. 766, 26 A. L. R. 894.

In Commonwealth v. Klick, 164 Pa. Super. 449, 450, 453, 65 A.2d 440, 441, 442, defendant was charged with violating section 1002(a), Article X of the Vehicle Code. That section provides: " 'Any person driving a vehicle on a highway shall drive the same at a careful and prudent speed, not greater than nor less than is reasonable and proper, having due regard to the traffic, surface and width of the highway, and of any other restrictions or conditions then and there existing * * *.' "

He appealed from a judgment of conviction on the ground that he was deprived of due process, in that the provisions of the statute were so vague, indefinite and uncertain as to be unconstitutional. The court found no merit in this contention. In affirming, the court held: "The mandate of §1002(a) is a salutary police measure limiting the operation of motor vehicles, in the public interest. *To define specifically permissible rates of speed under every conceivable condition would be manifestly impossible; hence the general language of §1002(a) is no valid objection to it on constitutional grounds.* The ordinary person can understand what standard of conduct is imposed." (Italics ours.)

In State v. Schaeffer, supra, 96 Ohio St. 215, 228, 230, 117 N.E. 220, 224, 225, L. R. A. 1918B, 945, 950, the statute which the accused violated was substantially the same as the statute in Commonwealth v. Klick, supra. His assignment of error was: "* * * the statute * * * is unconstitutional and void for the reason that it does not observe the constitutional guaranty of sufficiently advising the defendant of the nature of the accusation against him, in that the statute is too indefinite and uncertain in its terms. It is claimed that the words 'reasonable' and 'proper' are so general, comprehensive, and variable, that it would be impossible for the defendant to know, or for the jury to fairly determine, what was a violation of the statute; that juries in one case would hold a speed to be reasonable, while the same speed under the same circumstances might be held by another jury in the same county, at the same term, to be unreasonable. In short, it is urged that the statute should definitely fix what is a reasonable speed and a proper operation of a car. * * * The suggestion that * * * one jury may hold one way and another hold another way is no argument against this contention. That is inevitable under any system of jurisprudence on any set of facts involved in a criminal transaction." The judgment of conviction was sustained.

Under similar fact situations and comparable statutes the enactments were held constitutional and the convictions upheld in State v. Goldstone, 144 Minn. 405, 175 N.W. 892; People v. Beak, 291 Ill. 449, 126 N.E. 201; State v. Waterman, 112 Minn. 157, 127 N.W. 473; State v. Smith, 29 R. I. 245, 69 A. 1061.

In Pehl v. State, 153 Tex. Cr. Rep. 553, 555, 223 S.W.2d 238, 239, appellant was committed to jail for three months on a complaint charging negligent homicide. He urged on appeal that Article 1231 of the Penal Code did not charge an offense and that it was a mere abstraction not capable of practical application, and was void for want of due process of law under the 14th Amendment to the Constitution of the United States " 'for the reason that said statute fails to prescribe with reasonable certainty the elements of said offense.' " In affirming the court said: "Article 1231 * * * has furnished the basis for many prosecutions. So far as we are able to ascertain, this is

the first time the exact attack has been made on it. However, its constitutionality has been impliedly passed upon many times. We do not deem it necessary to enter into a discussion of the authorities cited in appellant's brief. We have given careful attention to them and are not in accord with the contention made."

State v. International & G. N. Ry. Co., 107 Tex. 349, 352, 353, 179 S.W. 867, 868, 869, was a suit by the State to recover penalties for violation of a statute requiring any operator engaged in constructing or repairing railroad equipment to maintain a shelter where as many as five workmen · were employed, except where it was " 'necessary to make light repairs only on cars.' " The holding of the trial court and the Court of Civil Appeals (165 S.W. 892) was that the statute was too indefinite in its terms to be enforceable. The State brought error to the Supreme Court of Texas which reversed the judgment. It was contended by the appellee that the term "light repairs" was too indefinite. The Supreme Court said: "* * * if the Act of the Legislature is as definite in meaning as the nature of the subject would allow, no more than this should be expected to meet the rule of certainty required; to hold otherwise would be to nullify the power of the Legislature to legislate at all on a proper subject for its consideration. * * * We know of no rule of construction that would authorize us to nullify an Act of the Legislature because of uncertainty in meaning when from the nature of the subject legislated upon no more definite meaning could reasonably be expressed, the effect of which would be to prohibit legislation upon the subject. What constitutes 'light repairs' in any stated line of industry should find little difficulty among those engaged in that particular line of employment. We think the statute in question is sufficiently definite for those affected by it to understand its meaning so as to know under what circumstances they would be transgressing its provisions. This is all that is or should be required."

What was known as the "Water-closet Law" in Texas was challenged as indefinite because of a provision that railway-station closets be kept " 'in a reasonably clean and sanitary condition.' " In upholding the statute the court in State v. Texas

& P. Ry. Co., 106 Tex. 18, 22, 154 S.W. 1159, 1161, said: "Its terms are suitable to the subject matter of the Act; and having regard for the difference in conditions at the stations upon railway lines where it is made operative, the use of more specific language would very probably have provided only an arbitrary and impracticable rule."

A federal statute involved the hours of work for telegraph operators and dispatchers, " 'except in case of emergency.' " In holding the act valid the United States Supreme Court in Baltimore & Ohio R. Co. v. Interstate Commerce Comm., 221 U. S. 612, 620, 31 S. Ct. 621, 625, 55 L. Ed. 878, 883, said: "It is said the words 'except in case of emergency,' make the application of the act so uncertain as to destroy its validity. But this argument in substance denies to the legislature the power to use a generic description, and if pressed to its logical conclusion would practically nullify the legislative authority by making it essential that legislation should define, without the use of generic terms, all the specific instances to be brought within it. In a legal sense there is no uncertainty. Congress, by an appropriate description of an exceptional class, has established a standard with respect to which cases that arise must be adjudged."

The defendant, in Mulkern v. State, 176 Wis. 490, 187 N.W. 190, was charged with violating the portion of a section found in the motor-vehicle statutes of many states penalizing the operator of any motor vehicle for driving at a rate of speed greater than is reasonable and proper considering the width, traffic and use of highways " 'so as to endanger the property, life or limb of any person.' " He made the usual defense of vagueness in the statute. The court affirmed his conviction. In State ex rel. Zent v. Yanny, 244 Wis. 342, 346, 12 N.W.2d 45, 47, the court said: "It is not necessary that the law be so definite that the offending operator of a vehicle may know with certainty just how negligent he may be * * * before he becomes criminally liable under the negligent-homicide statute. See Nash v. United States, 229 U. S. 373, 376–378, 33 S. Ct. 780, 57 L. Ed. 1232. No operator of a [motor] vehicle has a legal right to be negligent in any degree."

In Lohman v. District of Columbia (Mun. Ct. App.), 51 A.2d 382, appellant was convicted of violating a vehicle regulation requiring a " 'vehicle approaching an intersection shall slow down and be kept under such control as to avoid colliding with pedestrians or vehicles.' " In affirming the court said: (pages 383, 384) "In reality this language imposes no different or stricter standards than those of reasonable care established by common law, and which would apply if the District Commissioners had passed no regulation on the subject. Even in the absence of statute or regulation a motorist approaching an intersection is required to exercise reasonable care by keeping a lookout ahead, and by driving at such speed and in such manner as to have his automobile under reasonable control so as to be able to stop when he sees or reasonably should see other vehicles in or approaching the intersection. The regulation * * * requires no more than that, for it 'only makes obligatory the rule of common sense regarding the duty of a driver at the intersection of streets * * *.' * * * We hold the regulation to be reasonable and valid." The appellant contended the regulation was void "because unreasonable, indefinite and uncertain, and because it fixes no standard by which the negligence of a driver may be determined."

Speaking of the specification of reasonable standards of guilt in a criminal statute, it is stated in Siegman v. District of Columbia (Mun. Ct. App.), 48 A.2d 764, 765, 766, in which appellant contended the act was vague, that: " 'A catalogue of particulars' is frequently not susceptible of enumeration in advance of the act and is not required. People v. Mancuso, 255 N. Y. 463, 175 N.E. 177, 76 A. L. R. 514. The courts, approaching the problem realistically, often perceive very practical limits to the degree of definiteness and certainty which can be attained in framing legislation upon some subjects. Patterson v. Stanolind Oil & Gas Co., 182 Okla. 155, 77 P.2d 83. The standards may be flexible, requiring the exercise of judgment and the making of careful estimates in applying them to a given set of facts. But this is not casting an unreasonable burden upon citizens subject to such laws or regulations. Our United States Court of Appeals has ruled that because the standard of criminal

liability may be one of varying degree, this does not make a law unconstitutional; and pointed out that 'many of the most familiar terms of the law are of this character.' United States v. Henderson, 73 App. D. C. 369, 121 F.2d 75. As Justice Holmes said in Nash v. United States, 229 U. S. 373, 377, 33 S. Ct. 780, 781, 57 L. Ed. 1232, 'The law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree.' And in a later case, United States v. Wurzbach, 280 U. S. 396, 399, 50 S. Ct. 167, 169, 74 L. Ed. 508: 'Wherever the law draws a line there will be cases very near each other on opposite sides. The precise course of the line may be uncertain, but no one can come near it without knowing that he does so, if he thinks, and if he does so it is familiar to the criminal law to make him take the risk.' "

The appellant in the above-noted case was a licensed photographer convicted of violating a police regulation that such photographers should not impede traffic, nor remain longer at any one location than five minutes on the streets, sidewalks or other public spaces. He urged that the statute was unreasonable and vague. The conviction was sustained.

In State v. Anthony, supra, 179 Ore. 282, 292, 169 P.2d 587, 592, the Oregon court said: "A criminal statute passed pursuant to the police power should be stricken down for indefiniteness only if it cannot be saved wholly or in part by judicial application of the rules of statutory construction. * * * 'it may be stated that there has been a tendency to a much more liberal construction of such statutes in the more recent decisions * * *.' (Citing Standard Oil Co. v. United States, 221 U. S. 1, 31 S. Ct. 502, 55 L. Ed. 619, 34 L. R. A., N. S., 834, Ann. Cas. 1912D 734.)"

"Legislation belonging to the class enacted for the common welfare has put the burden upon the individual of ascertaining at his peril whether the conduct is within the scope of the criminal prohibition." 8 Cyclopedia of Automobile Law & Practice, 129.

An able and well considered and perhaps the leading case on the subject matters herein discussed is State v. Wojahn, 204

Ore. 84, 282 P.2d 675, holding that a negligent homicide statute predicating criminality on negligence does not violate the due process requirement, or the Oregon constitutional provision giving defendant the right to demand the nature and cause of the accusation against him. Judgment on a demurrer to the indictment on the ground that it did not charge the commission of a crime was reversed. The statute on which the indictment was based provided, in substance, that no person should drive a vehicle on a highway at a speed greater than is reasonable and prudent having regard to the traffic, surface and. width of the highway, the hazard at intersections, and any other · conditions.

A second section prohibited speed greater than permitted the driver to exercise proper control of the vehicle and to decrease speed or stop as might be necessary to avoid a collision with a person or conveyance on or entering a highway.

The opinion was announced in April 1955 and discusses a large number of pertinent cases. Defendant's challenge to the indictment was in fact an attack upon the statute, his contentions being that a conviction thereunder would deprive him of his liberty without due process of law, in violation of the 14th Amendment to the Constitution of the United States, and that the statute by its vagueness impaired his constitutional right to know the nature and cause of his accusation, and violated other constitutional rights.

Respecting the general rule of specificity in statutory statement of criminal offenses discussed in Division II hereof, Justice Rossman, the writer of the opinion states at pages 136 to 139 of 204 Ore., pages 700, 701 of 282 P.2d: "A statute which creates a new crime must express itself with clarity so that those who are about to engage in the conduct which it endeavors to prohibit may know by reading the statute that they will be subject to punishment if they proceed. Nothing less than that is required by the due process clause of the Fourteenth Amendment. The same clause renders invalid state penal laws which fail to set forth a standard with sufficient clarity so that those affected by them may know in advance whether or not their contemplated course of conduct will be lawful. The standard

must be expressed with such clarity that persons of common intelligence, after reading the statute, will not be compelled to guess as to its import or be unable to determine with reasonable certainty those to whom it is applicable. *However, the standard need not be defined with such precision that those affected by it will never be required to hazard their freedom upon correctly foreseeing the manner in which a matter of degree may be resolved by a jury. Although the decisions stress the importance of framing penal laws in terms which will readily disclose the acts and conduct which are proscribed, yet the courts realize the insuperable difficulty which a legislative draftsman would encounter if he were required to describe with precision every dangerous act which people may commit in carrying on a segment of their activities, such as motoring, and which he wishes to outlaw. Therefore, he may catalogue a broad category of conduct which he wishes to prohibit by referring to it as negligent driving or reckless driving.* [Italics ours.] * * * The Oregon negligent homicide statute, in selecting as its touchstone negligence, obviously, was prompted by a conviction that society can reasonably expect of motorists that they exercise due care and since that demand does not require much exertion upon the part of motorists, those who fail to meet the demand can reasonably be held to account. * * * The aim of the statute is not the imposition of vindictive punishment, but to save lives. Before any motorist is permitted to enter upon the public thoroughfares, he is required to apply for and receive an operator's license. * * * Before a license is issued to him, the secretary of state is required to examine the applicant as to his 'knowledge of the traffic laws of this state.' Thus, if a licensed motorist violates a traffic law and thereby brings someone to his death, the rule that ignorance of the law is no excuse has a just foundation in the plenary demands of the licensing statute."

In sustaining a statute prohibiting the driving of a motor vehicle on a public highway at a speed greater than is reasonable and proper, or so as to endanger life, limb or property of another, the Maryland court in State v. Magaha, 182 Md. 122, 125, 32 A.2d 477, 479, said: "But it is well settled that a penal statute or ordinance should not be held void merely because

juries may differ in their judgments in cases brought thereunder on the same state of facts." And "that a statute is not void for indefiniteness merely because it casts upon a person the risk of rightly estimating a matter of degree", as expressed by Justice Holmes in Nash v. United States, supra, 229 U. S. 373, 376, which thought the eminent jurist amplified somewhat in International Harvester Co. v. Kentucky, supra, 234 U. S. 216, 223, 34 S. Ct. 853, 855, 58 L. Ed. 1284, 1288, to wit: "That deals with the actual, not with an imaginary condition other than the facts. It goes no further than to recognize that, as with negligence, between the two extremes of the obviously illegal and the plainly lawful there is a gradual approach, and that the complexity of life makes it impossible to draw a line in advance without an artificial simplification that would be unjust. The conditions are as permanent as anything human, and a great body of precedents on the civil side coupled with familiar practice make it comparatively easy for common sense to keep to what is safe."

After citation of authorities referred to and quoted herein the court in the Magaha case said, on page 128 of 182 Md., page 480 of 32 A.2d: "We adopt the rule supported by the great weight of authority in the United States that a statute prohibiting under penalty the driving of a motor vehicle on a public highway at a speed greater than is reasonable and proper, or so as to endanger life, limb or property is not void for indefiniteness."

One of the comparatively few cases holding to the contrary is Hayes v. State, 11 Ga. App. 371, 75 S.E. 523, 526, decided in 1912. It and subsequent decisions of the Georgia courts were reviewed in State v. Wojahn, supra, 204 Ore. 84, 114, 282 P.2d 675, 690, 691, wherein it is stated: "We now turn to Gaines v. The State, 80 Ga. App. 512, 56 S.E.2d 772, 773, which was written thirty-seven years after the Hayes decision and when greater experience had been had with automobile operation and traffic laws." Then follows a quotation from the Gaines opinion, which refers to Ray v. State, 47 Ga. App. 22, 23, 169 S.E. 538, and a quotation therefrom stating that the holding in the Hayes case was contrary to the rule adopted in the majority

of the states, and noted decisions criticizing it. The Ray case upheld a section of the motor-vehicle statute as not being void for vagueness, and Lester v. State, 51 Ga. App. 146, 179 S.E. 869, citing the Ray case as authority, did likewise, and Collins v. State, 51 Ga. App. 147, 179 S.E. 869, ruled in accord with the Ray and Lester cases. The opinion in the Gaines case, then stated at page 515 of 80 Ga. App., page 774 of 56 S.E.2d: "In all of the cases which have been decided by this court since the decision in the Hayes case, the Hayes case has not .been cited, unless the precise question was involved, except to distinguish it from the case then under consideration and in some cases the court has gone even further, when it followed the Hayes case, and said that they only did so because they were bound by that case."

See 22 C. J. S., Criminal Law, pages 62 to 77; 26 A. L. R., pages 897 to 906; People v. McMurchy, 249 Mich. 147, 228 N.W. 723–736; 14 Am. Jur., Criminal Law, pages 773 to 782, for general discussion of this subject.

Two pertinent cases of this court are State v. Brighi, supra, 232 Iowa 1087, 1088, and State v. Paul, 242 Iowa 853–859, 48 N.W.2d 309. In the first named case, announced on December 15, 1942, the defendant, by information filed on November 7, 1941, was accused of the crime of failing to yield the right of way with his automobile at an intersection in the City of Fort Dodge, Iowa, on November 3, 1941, thereby causing a collision fatal to a pedestrian. Trial was had in justice court resulting in a conviction and a fine of $100 and costs. On appeal to the district court his plea of not guilty was withdrawn and a demurrer to the information was filed on the grounds: "1. That said information does not charge an offense against the laws of * * * Iowa. 2. That there is no clear statement of any affirmative act on the part of the defendant constituting an offense either of commission or omission such as is defined by any statute of * * * Iowa. 3. That there is no statute in * * * Iowa providing a penalty for the act charged in the information and the court would be without jurisdiction to assess any penalty even admitting the defendant committed the act as charged * * *." The demurrer was sustained and the State elected to

stand on the ruling. This court found it necessary to consider only the first two grounds of the demurrer. On page 1089 of the report of the case in 232 Iowa, we said:

"The answer to either question depends upon an interpretation of chapter 175 of the Acts of the Forty-ninth General Assembly, which repealed section 5206.01 of the Code, 1939, *and enacted in lieu thereof the following provisions:*

" 'Where two vehicles are approaching on any public street or highway so that their paths will intersect and there is danger of collision, the vehicle approaching the other from the right shall have the right of way.

" 'The foregoing rule is modified at through highways and otherwise *as hereinafter stated in this chapter.'* " (Italics ours.)

This Act became a law July 4, 1941. There was nothing "hereinafter stated" in said chapter 175 of the Acts of the 49th G.A., and the italicized words were no doubt intended to refer to chapter 251 of the 1939 Code, which contained the repealed section 5026.01 for which said chapter 175 was "enacted in lieu thereof." When so considered, section 5036.01 of chapter 251 made the violation of the new section, enacted "in lieu of" the repealed section, a misdemeanor. This was the contention of the Attorney General. But this court did not accept this view, and said at page 1091: "Here, section 5036.01 makes it a misdemeanor for one 'to do any act forbidden or to fail to perform any act required' by the chapter on the law of the road. But, when we undertake to apply that section to chapter 175, Acts of the Forty-ninth General Assembly, we find that said chapter 175 does not expressly forbid any act." Consequently the judgment on the overruling of the demurrer was affirmed.

In State v. Paul, supra, 242 Iowa 853, defendant, operating an automobile, was convicted of the crime of failing to yield the right of way to a pedestrian at a street intersection, in violation of section 321.257 of the 1946 Code of Iowa, which provided for the control of traffic at such intersections by exhibiting the words "Go", "Caution" or "Stop" or by green, yellow or red lights. On appeal he urged that the failure to yield the right of way was not a criminal offense. He based his contention on

our holding in State v. Brighi, supra. This court held that the Brighi case involved the construction only of chapter 175 of the Acts of the 49th G. A. and that the holding therein did not aid the appellant. In holding that the Code section violated was "clear, definite and precise—nothing left to implication", and a valid criminal statute, the court said at page 858: "Taking the prohibition as set forth in section ·321.257 in connection with the provisions of section 321.482 there can be no doubt that a violation of the former makes the offender subject to the penal provisions of the latter." The judgment was affirmed. We are in full agreement with the opinion.

■ We are abidingly convinced there is no merit in the judgment of the trial court holding section 321.285 of the 1954 Code of Iowa invalid and unconstitutional. Justice Rossman in State v. Wojahn, supra, 204 Ore. 84, 97, 282 P.2d 675, 682, quotes the words of Justice Butzel, in People v. McMurchy, supra, 249 Mich. 147, 171, 228 N.W. 723, 731: "In forty-seven states of the Union and in the District of Columbia and Hawaii there are statutes which forbid driving 'at a rate of speed greater than is reasonable and proper, having regard for the width, traffic and use of the highway and in a manner so as to endanger property or the limb of any person.' In some of the states the words 'careful and prudent' are used. In others, words with a like meaning to those quoted are used." Section 321.285 is in words and meaning substantially the same.

This statute is directed primarily to the operators of motor vehicles on public highways. Such persons must obtain licenses before they can lawfully become such operators, and to entitle them to such licenses must show their ability to properly operate motor vehicles and an adequate knowledge of the laws of the road and pertinent statutory provisions and other official requirements pertaining to motor-vehicle traffic. They familiarize themselves with the power of the vehicle's brakes, and the celerity with which they can slacken or accelerate the speed of the vehicle or stop it on straight highways, on curves, or up and down hills. They know or should know what speed is proper and reasonable under different traffic conditions. They will have no difficulty in understanding the provisions of section

321.285, and will know when they are violating them. The words of it are simple and their meaning well known to anyone having, or qualified to have, a motor-vehicle operating license. The section is sufficiently clear and specific to inform all motorists of what conduct on their part will subject them to the penalties of section 321.482 of the Iowa Code of 1954.

The judgment appealed from is, therefore, Reversed.

THOMPSON, C. J., and OLIVER, GARFIELD, LARSON, and PETERSON, JJ., concur.

SMITH, J., concurs in result.