**THOMAS W. GARLAND, INC.,**
**Appellant,**

v.

**The CITY OF ST. LOUIS and Manley**
**Investment Company, Appellees.**

**No. 78–1554.**

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 15, 1978.

Decided Feb. 28, 1979.

As Amended on Denial of Rehearing and
Rehearing En Banc May 15, 1979.

---

4. Counsel indicated they desired to call all jurors but made no adequate showing as to why this was necessary.

Allen A. Yoder of Rassieur, Long, Yawitz & Schneider, St. Louis, Mo., argued and on brief, for appellant.

Joseph R. Niemann, Asst. City Counselor, St. Louis, Mo. (argued), and Jack L. Koehr, City Counselor, St. Louis, Mo., on brief, for appellee, City of St. Louis.

Charles A. Newman, Thompson & Mitchell, St. Louis, Mo. (argued), Donald J. Stohr and Robert S. Bogard, St. Louis, Mo., on brief, for appellee, Manley Investment Co.

Before HEANEY and ROSS, Circuit Judges, and TALBOT SMITH, Senior District Judge.*

* The Honorable TALBOT SMITH, Senior United States District Judge, Eastern District of Michigan, sitting by designation, participated in the post-argument conference and concurred in the decision resulting in this opinion prior to his death on December 21, 1978.

ROSS, Circuit Judge.

Plaintiff, Thomas W. Garland, Inc. (Garland), operates a retail clothing store on leased premises in the downtown business area of St. Louis, Missouri. In its complaint, filed January 30, 1978, Garland alleges that condemnation proceedings originating in April 1973 by the city of St. Louis have effected a de facto taking of plaintiff's leasehold for which plaintiff seeks just compensation under the fifth and fourteenth amendments to the Constitution. Garland joined Manley Investment Company (Manley) as a defendant in this action, as owner of the fee interest in the leased property, and alleges that the lease has become frustrated or impossible to perform and should be cancelled because of the city's de facto condemnation of the leasehold.

In May 1978 the district court [1] sustained the motions of both defendants to dismiss the complaint for failure to state a claim for relief, Fed.R.Civ.P. 12(b)(6). We reverse and remand for additional proceedings.

## I.

The complaint alleges that in June 1971, the city's Board of Aldermen passed Ordinance 55952 declaring an area of the city including plaintiff's leased premises blighted, and redevelopment of the area necessary. In April 1973, Ordinance 56476 was passed, designating Mercantile Center Redevelopment Corporation (Mercantile) as developer, approving a redevelopment plan submitted by Mercantile, incorporating a contract between the city and Mercantile and delegating to Mercantile the power of eminent domain for the purpose of carrying out the contract. The development agreement also provided for vacation of a street which had served as the only entrance to Garland's shipping and receiving dock behind the leased building.

Garland further alleges that in March 1973, agents for Mercantile ordered Garland to vacate its premises by September 1974

and that relying on this statement and public announcements concerning the redevelopment project, Garland leased other premises for its administrative offices, fur storage and shipping and receiving functions, as well as additional properties to be used as retail stores, all of such accommodations made at considerable expense.

Between 1973 and 1975 defendant Manley, as Mercantile's agent, acquired the fee interest in plaintiff's leased property and others in the area. Surrounding buildings were demolished by use of a "headache ball." Part of the two-block area surrounding plaintiff's premises has been converted to a parking lot, and part now consists of vacant buildings. Plaintiff asserts that the two-block area has been stripped of its business and commercial character, rendering plaintiff's leasehold useless.

In June 1978, plaintiff was denied leave to file an amended complaint. The proposed amendment sets forth greater detail concerning the impact on plaintiff's operations resulting from the acts of Manley, Mercantile and the city, alleging that the "headache ball" has caused structural damage to plaintiff's building. Debris from the demolition of surrounding buildings has blocked the entrance to plaintiff's loading dock, clogged its air conditioning system and covered its merchandise with dust. Doorways and sidewalks in the vicinity are not cleared of snow, ice and garbage, and pedestrians no longer frequent plaintiff's area.

Plaintiff contends that after destroying the economic value of the district, leaving plaintiff under a "cloud of condemnation" for five years and rendering plaintiff's leasehold useless, the city and Mercantile ceased redevelopment plans because the entire project had been inadequately financed. The city had failed to secure a detailed financing plan from Mercantile as required by Section 29.080(15), Revised Code of St. Louis. Furthermore, although it was re-

---

1. The Honorable John F. Nangle, United States District Judge for the Eastern District of Missouri.

quired under provisions of the City Charter to begin condemnation proceedings within six months after the effective date of the redevelopment ordinances and although its agents told plaintiff to vacate the premises, the city has failed to commence official condemnation of plaintiff's leasehold.

## II.

We review the dismissal of plaintiff's complaint in light of the following standards:

[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

\*  \*  \*  \*  \*  \*

[A] complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory. Nor should a complaint be dismissed that does not state with precision all elements that give rise to a legal basis for recovery. Finally, a complaint should not be dismissed merely because the court doubts that a plaintiff will prevail in the action. That determination is properly made on the basis of proof and not merely on the pleadings.

The question, therefore, is whether in the light most favorable to the plaintiff, the complaint states any valid claim for relief. Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.

*Jackson Sawmill Co. v. United States*, 580 F.2d 302, 306 (8th Cir.) (citations omitted), *petition for cert. filed*, 47 U.S.L.W. 3278 (U.S. Oct. 24, 1978) (No. 75–585).

The district court dismissed the complaint because plaintiff had failed to allege any physical invasion or appropriation of the property, stating:

It is clear that plaintiff has failed to state a claim herein. Plaintiff does not allege that there has been any *physical entry* or *legal interference with its use or disposition of the property.* All that plaintiff asserts is the threat of condemnation, its impact upon the area, and its impact upon the business activities of plaintiff. While such facts may affect the ᵇe determined for the valuation of the property in any subsequent condemnation proceedings, such assertion is insufficient to state a claim herein.

(Emphasis added.) We do not agree with the district court that physical invasion or appropriation of the property is essential to a claim of de facto condemnation.

While the mere declaration of blight and other initial steps authorizing condemnation, even if they result in a decline in property values, do not constitute a taking requiring compensation to the property owner, *Danforth v. United States*, 308 U.S. 271, 286, 60 S.Ct. 231, 84 L.Ed. 240 (1939), governmental action short of acquisition or occupancy may constitute a constructive or de facto taking "if its effects are so complete as to deprive the owner of all or most of his interest in the subject matter." *United States v. General Motors Corp.*, 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311 (1945). *See also Richmond Elks Hall Ass'n v. Richmond Redev. Agency*, 561 F.2d 1327 (9th Cir. 1977):

When a public entity acting in furtherance of a public project directly and substantially interferes with property rights and thereby significantly impairs the value of the property, the result is a taking in the constitutional sense and compensation must be paid.

\*  \*  \*  \*  \*  \*

"[T]o constitute a taking under the Fifth Amendment it is not necessary that property be absolutely 'taken' in the narrow sense of that word to come within the protection of this constitutional provision; it is sufficient if the action by the government involves a direct interference with or disturbance of property rights. \* \* \* Nor need

the government directly appropriate the title, possession or use of the properties . . . ."

*Id.* at 1330 (citations omitted).

In *Richmond,* the claimant's property was located within the area declared blighted by the city and designated for redevelopment. The redevelopment project was given wide publicity; a schedule for purchase of the subject properties was established, and the city's redevelopment agency began acquisition and demolition in the project area. As a result, property insurance and loan funds for improvements on the subject properties became unavailable. The claimant suffered damage to its building and a serious decline in rental income. After redevelopment ceased for lack of funds, the Ninth Circuit found that a compensable taking of the claimant's property had occurred because the actions of the city and its agency had rendered the property unsaleable in the open market and "its use for its intended purposes * * * severely limited." *Id.* at 1330.[2]

In *Foster v. Herley,* 330 F.2d 87 (6th Cir. 1964), the Sixth Circuit faced similar facts and reversed the lower court's dismissal of the complaint for failure to state a claim. The district court in the present action noted the *Foster* decision but considered it overruled or substantially restricted by two subsequent Sixth Circuit cases, *Sayre v. City of Cleveland,* 493 F.2d 64 (6th Cir.), cert. denied, 419 U.S. 837, 95 S.Ct. 65, 42 L.Ed.2d 64 (1974) and *Woodland Market Realty Co. v. City of Cleveland,* 426 F.2d 955 (6th Cir. 1970).

The district court cited the following language in *Sayre:*

[A]bsent the extreme circumstances present in the *Foster* case, but lacking

here, we think the true rule is that there is no de facto taking of properties which have decreased in value because of an urban renewal project unless there is a physical invasion, damage or injury, or a restraint of some type, or action by the City to appropriate such properties.

*Sayre v. City of Cleveland, supra,* 493 F.2d at 70. However, in *Sayre* and *Woodland,* the subject properties had *not* been designated for acquisition and were merely adjacent to but *outside* of the redevelopment area. In *Sayre,* the Sixth Circuit explained the significance of the property's location in determining whether property has been constructively condemned:

*Woodland Market* acknowledges the authority of the legislative body to draw its own lines around the property it wishes to condemn by eminent domain. And the crucial geographic boundary is not that around the general planning area or the project area, *but around the property that the city has demonstrated that it intends to appropriate.* Absent the abuse of eminent domain found in *Foster, including some action by the city indicating that the particular piece of property at issue is to be appropriated,* economic loss caused by urban renewal does not constitute a taking within the meaning of the fifth and fourteenth amendments.

*Id.* at 69 (emphasis added).

In *Clinton Street Greater Bethlehem Church v. City of Detroit,* 484 F.2d 185 (6th Cir. 1973), the Sixth Circuit further explained the scope of its prior ruling in *Foster v. Herley, supra,* and the *Foster* decision on remand, *Foster v. City of Detroit,* 254 F.Supp. 655 (E.D.Mich.1966), *aff'd,* 405 F.2d 138 (6th Cir. 1968).

---

**2.** [A]s a result of Agency action, Elks' property was rendered unsaleable in the open market; its uses were severely limited by Agency; commercial lenders refused to make loans on the subject property; and Elks' peaceful enjoyment and its right to all rents and profits from the property were substantially impaired. *Given these consequences of Agency action, we conclude that Agency's interference with Elks' property rights was direct*

*and substantial, and that the result of this interference was a significant reduction in the value of the subject property.* Therefore, we hold that Agency effected a compensable taking under the Fifth and Fourteenth Amendments of the United States Constitution.

*Richmond Elks Hall Ass'n v. Richmond Redev. Agency,* 561 F.2d 1327, 1331 (9th Cir. 1977) (emphasis added).

The *important distinction between the appellant's alleged harm and the problems encountered by Mr. Foster is that all of Mr. Foster's problems stemmed from his being subject to the 1950 condemnation action. See* 330 F.2d at 88. The affirmative acts of the City which led the District Court to conclude that a taking had occurred prior to 1962 were all actions taken by the City in accordance with a condemnation action which it later abandoned, and including informing Mr. Foster that he would receive no compensation for improvements, advising him only to "keep the roof on and the water running"; requiring him to sign a waiver of claim for damages as a condition precedent to the issuance of a building permit (but waiving any claim to the increased value of the property as a result of the proposed improvements), completing the condemnation and clearance of several blocks in the area, and keeping the notice of lis pendens in effect for five years after the issuance of the stop order on the project, while at the same time, telling those who inquired that the property would be condemned soon. 254 F.Supp. at 662.

None of these factors pertain to this appellant, since this appellant was not subject to the 1950 condemnation action. *Clinton Street Greater Bethlehem Church v. City of Detroit, supra,* 484 F.2d at 188 (emphasis added). *See also Benenson v. United States,* 548 F.2d 939, 947–52 (Ct.Cl.1977);

*Drakes Bay Land Co. v. United States,* 424 F.2d 574, 584, 191 Ct.Cl. 389 (1970).

We therefore find that the district court's interpretation of the requirements for a claim of de facto condemnation were too restrictive. Accordingly, we remand with directions to reinstate plaintiff's claim against the city for resolution on its merits.[3]

### III.

■ The district court did not specify its reasons for dismissing plaintiff's claim against Manley. However, the action against Manley lacked an independent basis for federal court jurisdiction, and the federal claim against the city was dismissed before trial. Thus presumably the district court relied on the Supreme Court's statement in *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well."

Because we reinstate Garland's claim against the city, one of the obstacles[4] to entertaining jurisdiction over plaintiff's action against Manley is removed. The district court should therefore determine whether, in light of the guidelines established in *Owen Equip. and Erection Co. v. Kroger,* 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), and *Aldinger v. Howard,* 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), it may exercise ancillary, i.e.,

**3.** We suggest that on remand plaintiff should be permitted to file its amended complaint. In addition, we direct that on remand, the district court shall resolve the issue of the city's liability, if any, for the acts of Mercantile. The city disclaims any liability for the alleged de facto condemnation or abuse of the power of eminent domain, contending that its delegation to Mercantile of the power to condemn the subject property absolved the city of any further responsibility. Garland contends that Mercantile acted at all times as the city's agent.

**4.** Plaintiff seeks to append its state-law claim against Manley, an ancillary defendant for whom no independent basis of federal jurisdiction is alleged, to plaintiff's federal question claim against the city. The claims are based on the same operative facts and circumstances.

However, plaintiff has not asserted that Manley is a necessary party to resolution of the inverse condemnation claim against the city or that its claim against Manley involves a general federal question.

The Supreme Court has not yet indicated whether pendent party jurisdiction may be exercised when primary jurisdiction is founded on 28 U.S.C. § 1331(a). The district court should decide whether it has the power to assume ancillary jurisdiction over the claim against Manley, and if so, whether it should elect to do so. The issue may be clarified if plaintiff is permitted to amend its complaint to show, it it can do so, additional facts upon which it may rely to justify retaining Manley as an ancillary party.

pendent party, jurisdiction over the state-law claim against Manley. If the court finds that this is a proper case for the exercise of ancillary jurisdiction, it must decide whether, under the Missouri law of frustration of purpose or impossibility of performance, plaintiff has stated a claim for cancellation of the remainder of its lease.

Reversed and remanded for further proceedings consistent with this opinion.