492 F.Supp. 402 (1980)
THOMAS W. GARLAND, INC., Plaintiff,
v.
CITY OF ST. LOUIS et al., Defendants.
No. 78-129C(2).
United States District Court, E. D. Missouri, E. D.
June 27, 1980.
*403 Allen A. Yoder, St. Louis, for plaintiff.
Joseph R. Niemann and Robert H. Dierker, Jr., City Counselors, St. Louis, Mo., for City of St. Louis.
Donald J. Stohr, Charles A. Newman and R. J. Robertson, Thompson & Mitchell, St. Louis, Mo., for defendants Manley Inv. Co. and Mercantile Center.

MEMORANDUM
NANGLE, District Judge.
This case is now before the Court upon remand from the Eighth Circuit Court of Appeals. Plaintiff brought this action pursuant to 28 U.S.C. § 1331 seeking declaratory and monetary relief for an alleged de facto taking of its leasehold by defendant City of St. Louis.[1]
Plaintiff alleges that the city's Board of Aldermen passed an ordinance in June, 1971 declaring portions of downtown St. Louis blighted. In April, 1973 a subsequent ordinance was passed designating Mercantile Center Redevelopment Corporation ("Mercantile") as developer, approving a redevelopment plan submitted by Mercantile for six of the city blocks previously declared blighted, including plaintiff's leased premises, and granting Mercantile the power of eminent domain to carry out the plan. Plaintiff alleges that actions subsequently taken by Mercantile in connection with the redevelopment constituted a de facto taking of its leasehold. On May 23, 1978, this Court held that a cause of action was not stated, since there had been no physical invasion or appropriation of the property.
The Eighth Circuit subsequently reversed, holding that plaintiff's allegations stated a valid cause of action, even without allegations of physical invasion or appropriation of the property. 596 F.2d 784, cert. denied 444 U.S. 889, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979). That Court did not reach, since this Court had not, the question of whether the city could be held liable for the acts of Mercantile. This Court was directed to resolve that issue on remand. 596 F.2d at 789 n.3. The parties have briefed that issue further, and this Court now concludes that the city may not be held liable for the acts of Mercantile.
Mercantile was formed pursuant to The Urban Redevelopment Corporations Law of Missouri, §§ 353.010 et seq., R.S.Mo. (1969). Pursuant to this statute, corporations formed for the purpose of redeveloping blighted areas may be granted special privileges, *404 one of which is the power of eminent domain. § 353.130 R.S.Mo. (1969); Young v. Harris, 599 F.2d 870, 873-874 (8th Cir.), cert. denied 444 U.S. 993, 100 S.Ct. 526, 62 L.Ed.2d 423 (1979). Such corporations may exercise the power of eminent domain only when so empowered by the city to be affected. § 353.130(2) R.S.Mo. (1969). In approving the redevelopment plan submitted by Mercantile, and entering into the contract with Mercantile, the city granted Mercantile the power of eminent domain.
Plaintiff claims that the acts subsequently taken by Mercantile were as the city's agent, and that the city is therefore liable for Mercantile's action. The city claims that the relationship is better characterized as that of an independent contractor. This Court does not believe that either such characterization properly describes the relationship between a redevelopment corporation and the city which empowers it with the powers of eminent domain.
The need for urban redevelopment has been widely recognized in the past decades. The growing blight of the cities represented a danger not only to the areas and persons immediately involved, but also to all those who are part of the society that must deal with the rippling consequences of that blight. Annbar Associates v. West Side Redevelopment Corp., 397 S.W.2d 635 (Mo. banc 1965), appeal dismissed 385 U.S. 5, 87 S.Ct. 41, 17 L.Ed.2d 4 (1966). In response to the widely perceived need to eliminate these breeding grounds for social ills, many states passed laws similar to Missouri's "The Urban Redevelopment Corporations Law". "The obvious objective [of these laws] was to involve private enterprise in the monumental task of eliminating urban blighted areas and the inevitable social ills flowing therefrom." Council Plaza Redevelopment Corp. v. Duffey, 439 S.W.2d 526, 528 (Mo.banc. 1969).
In pursuit of this objective, the private corporations were enticed to pursue their own private, profit-motivated plans within the broader framework of the overall societal welfare through the offering of special privileges. These privileges included long-term tax abatements, § 353.110 R.S.Mo. (1969), and the power of eminent domain. § 353.130 R.S.Mo. (1969). By granting these corporations the power of eminent domain, the legislature assured that the areas to be redeveloped could be acquired at a non-prohibitive cost.
Just as necessary, however, was the cooperation and approval of the cities to be affected. Though the redevelopment corporations formed pursuant to the state law were ostensibly working for the societal benefit of eliminating blight, they could not be granted a license to redevelop at will. To this end, the city to be affected was given the authority to grant or withhold the power of eminent domain, depending on the city's assessment of the need for redevelopment and the ability of the corporation to accomplish that end.
It is within this context that the relationship between the city and Mercantile must be assessed. It is clear that Mercantile was acting not as the city's agent, in the sense that it was carrying out the plans of the city, or as an independent contractor of the city, in the sense that it was "hired" by the city to do a job, but in furtherance of its own profit-motivated objectives pursuant to authority granted by the city. This authority was granted by the city due to its perception that the goals of Mercantile coincided with the broader societal goals of eliminating urban blight.
This characterization of Mercantile as a private enterprise acting on its own behalf is supported by the few cases which have tangentially touched on this issue. Young v. Harris, supra, dealt with the relationship between a redevelopment corporation and the city in which it operated in a different context, but its characterization of that relationship is highly relevant to this case. In that case, plaintiffs were challenging a redevelopment plan on the basis of its asserted violation of various federal laws. The applicability of these laws was dependent on a finding that the redevelopment had been undertaken by a governmental agency. Resolution of this issue depended on whether plaintiff's characterization of the project as a joint undertaking in the nature *405 of a partnership between the redeveloper and the city was accurate. The court found "that the evidence [was] clearly inadequate to establish that the activities of the City of St. Louis and the private developer [were] sufficiently intertwined to characterize them as one project undertaken by a state instrumentality". Id. at 877.
Just as in the instant case, the redevelopment corporation in Young was a privately-held corporation, organized and controlled by private interests, and financed by private sources. The assistance provided by the city because of its desire to encourage and promote private redevelopment of blighted areas was not deemed sufficient to deprive the project of its private status. Id. "The states have enlisted the aid of private enterprise to combat urban blight, but have not sought to change the status of these corporations from privately owned, profit-motivated enterprises." Id. "Historically, the power of eminent domain has been granted by legislative enactment to private corporations, of which railroads and private utilities are prime examples. That grant does not transform these private corporations into governmental entities or instrumentalities of the state." Id. at 878.
Though these statements were given in a different context, they are relevant to the instant case. They point out, to a large extent, that Mercantile was acting in its own profit-motivated interests. Such a position is inconsistent with plaintiff's characterization of Mercantile as the agent of the city, for the essence of agency is that the agent acts only in the interests of the principle.
The relationship between the city and Mercantile was characterized Annbar Associates, supra, at 639, as "a program of cooperation between government and private enterprise". The court in that case stated, and this Court must agree, that it is the private redevelopment corporation that takes the initial step as the condemnor. Id. at 647. The city's grant of the power to the corporation does not transform the city into the condemnor.
Plaintiff argues that the city may not contract away its power to condemn property. Pearson v. City of Washington, 439 S.W.2d 756 (Mo. 1969); State v. Hammel, 372 S.W.2d 852 (Mo. 1963). That was not done in this case however. The city granted Mercantile the power to exercise eminent domain in the redevelopment area, but there is no indication that the city's own power was thereby limited. As recognized in Young, supra, legislatures have long granted private corporations the power of eminent domain. Likewise, the Court in Annbar Associates stated, supra at 647, "We cannot say that public bodies are the only entities that may be invested with the power of eminent domain  the authority to designate those entities with whom it may invest that power is solely that of the legislative branch".
The Missouri Legislature, in conjunction with the City of St. Louis, has granted Mercantile the power of eminent domain. If this power was abused, that abuse was by Mercantile, not the city.[2]
NOTES
[1] Plaintiff initially also sought cancellation of its lease with defendant Manley Investment Company, due to the alleged frustration of the lease caused by the city's de facto taking. Pursuant to the Eighth Circuit's directions on remand, this Court decided that jurisdiction was lacking as to this pendant state claim, and the case was thereby dismissed as to Manley Investment Company. See Order of January 18, 1980.
[2] In plaintiff's amended complaint, the city is alleged to have improperly approved Mercantile's redevelopment plan, and improperly supervised Mercantile's actions. Such activities, even if true, do not transform the city into the condemnor. As this is an action for inverse condemnation, such allegations do not defeat the instant motion to dismiss. Whether a cause of action may be asserted against the city due to its alleged negligence under a different theory is not now before the Court, as no such theory has been alleged.