**ST. CROIX WATERWAY ASSOCIATION, Plaintiff,**

**v.**

**George E. MEYER, in his official capacity as Secretary of the Wisconsin Department of Natural Resources, and Rodney W. Sando, in his official capacity as Commissioner of the Minnesota Department of Natural Resources, Defendants.**

**Civil No. 4–96–58.**

United States District Court,
D. Minnesota,
Fourth Division.

Oct. 18, 1996.

Charles K. Dayton and Jeffrey A. Eyres, Leonard, Street & Deinard, Minneapolis, MN, for Plaintiff.

James K. McKay, Jr., Wisconsin Attorney General's Office, Madison, WI, for Defendant George E. Meyer.

David P. Iverson, Minnesota Attorney General's Office, St. Paul, for Defendant Rodney Sando.

## ORDER

MASON, United States Magistrate Judge.

The above matter came on for hearing before the undersigned Magistrate Judge on July 29, 1996 upon Defendant Rodney Sando's Motion to Dismiss [Docket Nos. 11 and 12] and upon Defendant George Meyer's Motion to Dismiss [Docket No. 22]. Pursuant to the provisions of 28 U.S.C. § 636(c) and related Rules of this Court, the parties waived their right to proceed before a United States District Judge and voluntarily consented to have all proceedings in this case conducted and determined by the undersigned Magistrate Judge. It was so ordered by District Judge John R. Tunheim.

## FINDINGS OF FACT

Plaintiff seeks a declaratory judgment of this Court declaring "that Minnesota Rule 6105.0320, subp. 4, and Section NR 5.32(3) of the Wisconsin Administrative Code are unconstitutionally vague in violation of the due process requirements set forth in the United States Constitution." [Docket No. 1] The matter is now before this Court on Motions of each of the Defendants to Dismiss the Complaint upon various grounds.

### Standards for Consideration of Motion to Dismiss

The Court of Appeals for the Eighth Circuit has provided this standard for the consideration of a Motion to Dismiss pursuant to Rule 12(b)(6):

"[A] motion to dismiss a complaint should not be granted unless it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief. *Thomas W. Garland, Inc. v. City of St. Louis,* 596 F.2d 784, 787 (8th Cir.), *cert. denied,* 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979). We must take the well-pleaded allegations of the complaint as true, and construe the complaint, and all reasonable inferences arising therefrom, most favorably to the pleader. *United States v. Mississippi,* 380 U.S. 128, 143, 85 S.Ct. 808, 816, 13 L.Ed.2d 717 (1965); *see also Bennett v. Berg,* 685 F.2d 1053, 1058–59 (8th Cir.1983); *Bramlet v. Wilson,* 495 F.2d 714, 717 (8th Cir.1974)."

*Morton v. Becker,* 793 F.2d 185, 187 (8th Cir.1986); *see also Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Hafley v. Lohman,* 90 F.3d 264 (8th Cir.1996).

### History of the Regulatory Scheme

The States of Minnesota and Wisconsin have adopted regulations which require that motorboats travel in certain zones of the Lower Saint Croix River at speeds no faster than a "Slow no-wake" speed, defined as "operation of a motorboat at the slowest possible speed necessary to maintain steerage." Very briefly stated, this litigation concerns whether the "Slow no-wake" language is unconstitutionally vague. Although the "Slow no-wake" language has been applied in other contexts, this case presents an issue of first impression. *See In re Cleveland Tankers, Inc.,* 67 F.3d 1200, 1204–05 & n. 4 (6th Cir.1995) (finding no error where the trial court used the Michigan Marine Safety Act's and two city ordinance's "slow-no-wake" language to find that a vessel, which caused an explosion when it collided with another vessel, was traveling at an excessive rate of speed), *cert. denied,* —— U.S. ——, 116 S.Ct. 1848, 134 L.Ed.2d 949 (1996).

The regulations in question were adopted as a part of a comprehensive plan for the protection of certain rivers, under the Wild and Scenic Rivers Act, 16 U.S.C. § 1271, *et seq.,* and the Lower Saint Croix River Act of 1972. Pub.L. 92–560, 86 Stat. 1174 (Oct. 25, 1972) (codified at 16 U.S.C. § 1274(a)). In adopting the Wild and Scenic Rivers Act, Congress declared its policy "that certain selected rivers of the Nation ... shall be protected for the benefit and enjoyment of present and future generations." 16 U.S.C. § 1271. Rivers in the National Wild and Scenic Rivers System include those which are authorized by an Act of Congress, and those which are included with the participation of the States. 16 U.S.C. § 1273(a). Parts of the Lower Saint Croix River were designated by Act of Congress pursuant to the Wild and Scenic River Act (16 U.S.C. § 1274) and the Lower Saint Croix River Act

of 1972. Pub.L. 92–560, 86 Stat. 1174 (Oct. 25, 1972) (codified at 16 U.S.C. § 1274(a)). Congress authorized the acquisition of land to further the purposes of the Wild and Scenic River Act (16 U.S.C. § 1277(a)), and appropriated $21,769,000 for land acquisition for the Saint Croix River. 16 U.S.C. § 1287. It imposed restrictions on water resources projects and on mining and mineral leasing (16 U.S.C. §§ 1278 & 1280), and withdrew public lands from disposition (16 U.S.C. § 1279).

Congress also determined that regulation and administration of the Wild and Scenic Rivers System should be accomplished "in such manner as to protect and enhance the values which caused it to be included in said system without, insofar as is consistent therewith, limiting other uses that do not substantially interfere with public use and enjoyment of these values." 16 U.S.C. § 1281(a). Responsibility would be shared by the states and the United States, and cooperative agreements and interstate compacts were encouraged. 16 U.S.C. §§ 1281–1284. For purposes of these Motions, the Court accepts as true Plaintiff's allegations that "Wisconsin and Minnesota have joint jurisdiction over the lower Saint Croix River" and that "Wisconsin and Minnesota DNR officers each apply their respective state's slow-no-wake regulation from shore to shore on the lower Saint Croix River."

The Legislatures of Minnesota and Wisconsin each enacted legislation authorizing the inclusion of the Lower Saint Croix River in the Federal Wild and Scenic Rivers System, and directed that their Natural Resource Commissioners join with the Secretary of the Interior to prepare a comprehensive master plan, and adopt rules for the regulation and administration of the river. Minn.Stat. § 103F.351; Wis.Stat.Ann. 30.27; Wis.Stat.Ann. 30.72.

### The Regulations In Dispute

The Departments of Natural Resources in Minnesota and Wisconsin each adopted regulations to implement the legislative enactment. The regulations are identical with respect to the issues in dispute in this litigation. Minnesota Rule 6105.0330, subpart 1 and Wisconsin NR 5.33(1) require that in the Lower Saint Croix River, motorboats shall not proceed at a rate "in excess of a slow speed." As to particular designated zones of the river, even a slower speed is required. In those zones, pursuant to Minnesota Rule 6105.0330, subp. 2, and Wisconsin NR 5.33(2), motorboats are forbidden to be operated at a rate "in excess of a slow-no wake speed." The terms "slow speed" and "slow-no wake speed" are defined elsewhere in the regulations, as follows:

**Minn. Rule § 6105.0320 Subp. 4/Wisconsin NR 5.32(3)**

"Slow-no wake" means operation of a motor boat at the slowest possible speed necessary to maintain steerage.

**Minn. Rule § 6105.0320 Subp. 5/Wisconsin NR 5.32(4)**

"Slow speed" means operation of a motorboat at a leisurely speed, less than planing speed, whereby the wake or wash created by the motorboat is minimal."

Plaintiff's Complaint challenges the "Slow-no wake" provisions of Minnesota Rule 6105.0320, subpart 4 and Wisconsin NR 5.32(3), but not the "Slow speed" provisions of Minnesota Rule § 6105.0320, subpart 5 and Wisconsin NR 5.32(4). Plaintiff's Complaint alleges that the "Slow no-wake" Regulations "fail to provide boaters with adequate notice of what conduct is being prohibited" and alleges that "persons of ordinary intelligence simply are not capable of determining that one speed at which they are both in control of their boat and not in violation of the Regulations." Further, they allege that the regulations "fail to provide law enforcement officers with sufficient standards to prevent arbitrary and discriminatory enforcement."

Plaintiff is an association of persons who regularly operate motorboats on the Lower Saint Croix River in zones which have been designated for travel at "Slow-no wake" speed (as well as in the zones designated for travel at "Slow speed"). Defendant Rodney W. Sando ("Sando") is the Commissioner of the Minnesota Department of Natural Resources, and is sued in that capacity. Defendant George E. Meyer ("Meyer") is sued in

his capacity as the Secretary of the Wisconsin Department of Natural Resources. Sando and Meyer are responsible for enforcement of the regulations which are in dispute herein.

## I. THE COMPLAINT PRESENTS AN ACTUAL CASE OR CONTROVERSY, AND PLAINTIFF DOES NOT LACK STANDING.

Sando (but not Meyer) asks for dismissal of Plaintiff's Complaint on the ground that it does not present an actual case or controversy under Article III of the United States Constitution, and that Plaintiff lacks standing. He argues that the threat to Plaintiff is not sufficiently certain or direct to permit the Court to entertain a facial attack on the regulations, particularly where no constitutionally protected activity is at risk.

Resolution of such cases depends upon the particular facts presented, and as Plaintiff notes in this case, the "slowest possible speed" for any vessel will depend upon many variables concerning the watercraft, its engine, and its cargo, among others. Issues of vagueness require a careful analysis of the facts in the particular case (*e.g. United States v. Mazurie,* 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975); *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494 n. 7, 102 S.Ct. 1186, 1191 n. 7, 71 L.Ed.2d 362; *United States v. Powell,* 423 U.S. 87, 92, 96 S.Ct. 316, 319–20, 46 L.Ed.2d 228 (1975)), but this is a principle of caution, not a rule of jurisdiction.

■ In this case, the regulations have been in effect and regularly enforced since 1979. Hearings were recently held to authorize the application of the regulations to a broader stretch of the river, for the purposes of conservation which underlie the adoption of the regulations. Given the objective of the regulations, and the belief in the importance of enforcement of those regulations to the environment, it is apparent that the threat of prosecution under the regulations is direct and real, and that Plaintiff's Complaint presents an actual case or controversy. *Steffel v. Thompson,* 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974); *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Mausolf v. Babbitt,* 85 F.3d 1295 (8th Cir.1996).

■ The Eighth Circuit's recent decision in *Mausolf* is illustrative. In that case, the Voyageurs Region National Park Association ("Association") and other conservation groups moved to intervene in an action brought by three snowmobile enthusiasts and the Minnesota United Snowmobilers Association to enjoin the enforcement of restrictions on snowmobiling in Voyageurs National Park. The Association submitted affidavits from several of its members stating that they had visited the Park in the past, that they planned to visit it in the future, and that they would be injured directly if the restrictions on snowmobiling were lifted. Under those facts, the *Mausolf* court held that the Association had the Article III standing required for intervention. *Mausolf,* 85 F.3d at 1301–02. Analogous to the situation in *Mausolf,* the St. Croix Waterway Association has alleged that its members regularly use the Lower St. Croix River for business and recreational boating and have been prosecuted for violating the "Slow-no wake" regulations. Accordingly, the Court rules that the Plaintiff has Article III standing to pursue its constitutional challenge to the "Slow-no wake" regulations.

## II. THIS COURT SHOULD NOT ABSTAIN FROM RULING.

■ Sando (but not Meyer) urges that this Court should abstain from ruling upon the constitutionality of the regulations, in favor of a decision by the "state courts." There are circumstances where the Court should exercise its discretion by abstention in favor of a determination by the highest court of the state whose action is challenged. *E.g. Alabama State Federation of Labor v. McAdory,* 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945). Those circumstances are not present here. The regulations at issue have been adopted by two states, pursuant to a process prescribed by federal law, to achieve a goal of equal importance to both states. *See Procunier v. Martinez,* 416 U.S. 396, 402, 94 S.Ct. 1800, 1806, 40 L.Ed.2d 224 (1974), *overruled on other grounds, Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104

L.Ed.2d 459 (1989); *Baggett v. Bullitt*, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); *Wisconsin v. Constantineau*, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971).

## III. THIS COURT HAS JURISDICTION, AND VENUE IS PROPER.

Plaintiff asserts jurisdiction in this Court based upon a federal question (28 U.S.C. § 1331), and seeks venue in this district, asserting that this is a judicial district in which "a substantial part of the events or omissions giving rise to the claim occurred." If there is jurisdiction over Meyer, there does not appear to be a genuine dispute as to the propriety of venue. Meyer objects to venue, but we think that is because Paragraph 4 of Plaintiff's Complaint by typographical error cited 28 U.S.C. § 1392(b) rather than 28 U.S.C. § 1391(b)(2) as must have been intended, given the allegations which follow the citation. 28 U.S.C. § 1391(b)(2) (venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"); *see also* 28 U.S.C. § 1391(b)(3) (venue is proper in "a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought").

Meyer is sued in his official capacity as the Secretary of the Wisconsin Department of Natural Resources. He argues that this Court may not exercise jurisdiction over him, because his conduct is not of the kind which the Minnesota legislature has authorized its courts to reach under its "long arm" statute, and because it would be unconstitutional for any court sitting in Minnesota to exercise jurisdiction over that conduct, even if the Minnesota Legislature purported to authorize it. Minnesota's long-arm statute provides that "a court of this state with jurisdiction of the subject matter may exercise personal jurisdiction over ... any nonresident individual ..." Minn.Stat. § 543.19, subd. 1. This provision applies if the nonresident individual uses real or personal property situated in Minnesota or commits any act within Minnesota or outside Minnesota which causes injury or property damage in Minnesota. Minn.Stat. § 543.19, subd. 1(a), (c) & (d).

Both parties conclude that jurisdiction is to be determined in this case like it is in any other, and that this Court must determine that both state and constitutional requirements are met before exercising jurisdiction. *Wessels, Arnold & Henderson v. National Medical Waste, Inc.*, 65 F.3d 1427, 1431 (8th Cir.1995). Thus, Minnesota's long-arm statute, Minn.Stat. § 543.19, must be satisfied, as must the requirements of due process. *Wessels*, 65 F.3d at 1431. As Plaintiff notes, however, since Minnesota's "long arm" statute has been construed to extend as far as the Constitution permits, *id.*, application of the test in Minnesota does not require scrutiny of Minnesota's long-arm statute. This Court thus turns to consideration of the due process issue.

*Wessels* recites the standards for considering the constitutional issues raised by claims of jurisdiction. *Id.* at 1431–34; *see also Minnesota Mining & Mfg. Co. v. Nippon Carbide Indust. Co.*, 63 F.3d 694, 697 (8th Cir.1995), *cert. denied*, —— U.S. ——, 116 S.Ct. 1288, 134 L.Ed.2d 232 (1996). Due process allows a court to exercise personal jurisdiction over a non-resident defendant when the defendant has "certain minimum contacts with [the state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (*quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342–43, 85 L.Ed. 278 (1940)). Where a party has "purposefully established 'minimum contacts' in the foreign state" it is proper for the Court to exercise its jurisdiction in that state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183, 85 L.Ed.2d 528 (1985). These due process standards are equally applicable to "federal question" and "diversity" jurisdiction claims. *Dakota Industries, Inc., v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1389 n. 2 (8th Cir.1991).

In conjunction with these basic principles of due process, federal courts apply a five-

factor test in analyzing the constitutional requirements needed for personal jurisdiction: (1) the nature and quality of defendant's contacts with the forum state; (2) quantity of contacts; (3) source and connection of the cause of action with those contacts, and to a lesser degree; (4) the interest of the forum state; and (5) the convenience of the parties. *Wessels*, 65 F.3d at 1432. Two of these factors are not of particular assistance in this case. The interests of Wisconsin do not predominate over those of the forum state of Minnesota (nor the other way around), and the convenience of the parties would be similar whether the case were brought in either state.

■ The consideration of the other three factors warrant the exercise of jurisdiction. Minnesota and Wisconsin consciously determined that they would jointly administer the Minnesota and Wisconsin sides of the Lower Saint Croix River. They did this pursuant to federal law. *See* Wild and Scenic Rivers Act, P.L. 90–542, 82 Stat. 906 (codified as 16 U.S.C. §§ 1271–87); Lower Saint Croix River Act of 1972, Pub.L. 92–560, 86 Stat. 1174 (Oct. 25, 1972) (codified at 16 U.S.C. § 1274(a)); Plaintiff's Complaint ¶ 8 & 9. Each state has adopted identical regulations applicable to the waters of both states. Minn.Rule 6105.0320, subparts 4–5; Wis. NR 5.32(3)–(4). Pursuant to law, each state is entitled to enforce the regulations without regard to whether the alleged violation occurs in Minnesota or Wisconsin. *See* Wis. Stat.Ann. § 30.72 ("All officers so empowered by this section may exercise reciprocal powers, which may be conferred upon them by the state of Minnesota or its agencies or political subdivisions relating to enforcement of regulations governing the use or operation of boats on the lower St. Croix river."). These contacts by Meyer with the State of Minnesota are qualitatively and quantitatively substantial, pervasive and purposeful. It is not the conduct of Plaintiff, but that of Defendant Meyer, which causes the contact with the State of Minnesota.

The United States Supreme Court has concluded: "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184. It is amply clear that the Wisconsin regulations are purposefully directed at Minnesota waters in the Lower Saint Croix River, and that this Court has jurisdiction over Defendant Meyer.

## IV. THE REGULATIONS ARE NOT UN-CONSTITUTIONALLY VAGUE.

Plaintiff contends that the above-quoted regulations do not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 107, 92 S.Ct. 2294, 2298, 33 L.Ed.2d 222 (1972). Plaintiff argues that the regulations require the operator to travel at a single speed (since traveling slower than "the slowest possible speed necessary to maintain steerage" would cause them to lose the ability to maintain steerage, and traveling faster would be unlawful), and that this single speed is incapable of being known, because of the many variables which affect the ability to maintain steerage, such as the size and design of the boat, water surface conditions and weather, water current, weight of cargo, and matters of skill. Therefore, Plaintiff argues, the regulations "set forth a vague and incomprehensible standard that makes it unlawful to travel at any speed other than the one indeterminable and constantly changing 'slowest possible speed.'" Although Plaintiff emphasizes its view that the required speed is a single speed, above which a motorboat is not allowed to travel and below which it is improvident to travel, this is not a material consideration in determining whether or not the above-quoted regulations are ambiguous. To the extent that Plaintiff's argument is addressed to the wisdom of the regulations, that issue is more properly addressed to the Minnesota and Wisconsin Legislatures.

The reasons underlying the requirement that a statute set forth its prohibitions with clarity were described by the Supreme Court in *Grayned*, 408 U.S. at 107, 92 S.Ct. at 2298 (footnotes omitted):

" 'It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute 'abut(s) upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of (those) freedoms.' Uncertain meanings inevitably lead citizens to 'steer far wider of the unlawful zone'... than if the boundaries of the forbidden areas were clearly marked.' "

*Accord Kolender v. Lawson*, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); *see also Planned Parenthood of Minnesota v. Minnesota*, 910 F.2d 479 (8th Cir.1990).[1]

■ This case does not implicate any First Amendment or other basic constitutional freedoms, with the exception of the due process concerns raised by Plaintiff.[2] However, after considering Plaintiff's due process challenge to the specificity of the "Slow-no wake" language, this Court concludes that the language is not so vague or unclear that prosecution thereunder would deprive a defendant of due process of law.

Courts in other cases have concluded that similar laws are sufficiently specific to avoid constitutional attack. In *Sproles v. Binford*, 286 U.S. 374, 52 S.Ct. 581, 76 L.Ed. 1167 (1932), the Supreme Court considered a statute which required trucks to follow the "shortest practicable route." *Id.* at 393, 52 S.Ct. at 587. The Court upheld the statute, finding: " 'Shortest practicable route' is not an expression too vague to be understood." *Id.* It explained:

"The requirement of reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding."

*Id.* (citations omitted).

The interpretation of the "Slow no-wake" language is aided by the existence of the "slow speed" regulatory language, which Plaintiff does not challenge. In the "slow speed" zones, one must travel "at a leisurely speed, less than planing speed, whereby the wake or wash created by the motorboat is minimal." Minn.Rule § 6105.0320, subp. 5; Wis. NR 5.32(4). In the "Slow no-wake" zone, one must travel at an even slower pace, no faster than necessary "to maintain steerage," and in such a way as to create no wake. Minn.Rule § 6105.0320, subp. 4; Wis. NR 5.32(3).

The principle applied in *Sproles* has been applied in many cases similar to the regulations at issue herein. Both Minnesota and Wisconsin have identical laws which regulate

---

1. It would certainly be dangerous if the legislature could set a net large enough to catch all possible offenders, and leave it to the courts to step inside and say who could be rightfully detained, and who should be set at large. This would, to some extent, substitute the judicial for the legislative department of government. *United States v. Reese*, 92 U.S. 214, 221, 23 L.Ed. 563 (1875).

2. Plaintiff claims that the enforcement of the above-quoted regulations "implicates the constitutional right to freedom of movement," but Plaintiff does not seriously argue the point. It is clear that United States citizens possess the "right to travel" from one state to another, and that states may not prohibit such travel. *Ketchum v. City of West Memphis*, 974 F.2d 81, 83 (8th Cir.1992). However, it is equally clear that states may impose reasonable restrictions on the right to travel and that if a person commits a crime while traveling that he or she is subject to arrest and prosecution. *Crain v. Board of Police Commissioners*, 920 F.2d 1402 (8th Cir.1990) (regulations prohibiting officer on sick leave from leaving his residence except to obtain medical treatment did not violate constitutional right to travel); *Ketchum*, 974 F.2d at 83 ("If Ketchum, while in Arkansas, committed a crime, he was of course subject to arrest and prosecution.").

speed on highways in terms that are not scientific or mathematical: "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard for the actual and potential hazards then existing." Minn.Stat. § 169.14, subd. 1; Wis.Stat. § 346.57(2). These laws have withstood void-for-vagueness challenges in Minnesota and Wisconsin. *State v. Goldstone*, 144 Minn. 405, 175 N.W. 892 (1920); *State v. Waterman*, 112 Minn. 157, 127 N.W. 473 (1910); *Mulkern v. State*, 176 Wis. 490, 187 N.W. 190 (1922). Convictions for violating such laws have also been upheld in both states when the sufficiency of evidence was challenged. *In re Welfare of D.S.F.*, 393 N.W.2d 372, 373 (Minn.Ct.App.1986); *Mulkern*, 187 N.W. at 191.

The "Slow-no wake" language is not more difficult to understand than the "reasonable and prudent" language in this common highway statute. Even more than under the "Slow-no wake" language under attack, the "reasonable and prudent" speed will change depending on an almost infinite number of variables. *See Simon v. Carroll*, 241 Minn. 211, 62 N.W.2d 822, 826 (1954) ("The reasonableness of a motorist's speed is always to be gauged by the surrounding actual and potential hazards of which he has knowledge or, which he, as a reasonably prudent man, ought to have anticipated....").

Courts in other states have had no difficulty sustaining the constitutional validity of speeding laws with similar "reasonable and prudent" language. *See, e.g. State v. Rich*, 115 Ariz. 119, 563 P.2d 918 (1977); *Gano v. State*, 466 S.W.2d 730, 732 (Tex.Crim.App. 1971) (*citing Eaves v. State*, 171 Tex.Crim. 670, 353 S.W.2d 231 (App.1961)); *Smith v. Florida*, 237 So.2d 139 (Fla.1970) ("The weight of authority ... is that such statutes are not offensive to constitutional require-

ments."); *State v. Coppes*, 247 Iowa 1057, 78 N.W.2d 10 (1956); *People v. De Casaus*, 150 Cal.App.2d 274, 309 P.2d 835, 838–39, *cert. denied*, 355 U.S. 890, 78 S.Ct. 262, 2 L.Ed.2d 189 (1957); *Commonwealth v. Klick*, 164 Pa.Super. 449, 65 A.2d 440, 442 (1949); *see also* 6 A.L.R.3d 1326 ("Indefiniteness of Automobile Speed Regulations as Affecting Validity") (citing relevant cases). As one court stated, these statutory provisions are "an adequate standard by which a driver's conduct can be tested" and do not, therefore, abridge a defendant's constitutional rights. *People v. Pupillo*, 37 Misc.2d 455, 235 N.Y.S.2d 522, 525 (1962).

North Dakota has adopted boating regulations which are identical to those of Minnesota and Wisconsin,[3] and the Hawaii and Delaware regulations are almost identical.[4] Many other states have boating laws or regulations containing similar language.[5] Of course, if the language is unclear and ambiguous, it is no answer to say that many other states have used the same language. In this case, however, we think that the many similar regulations are evidence that the language used carries a common understanding which is sufficiently clear to persons of ordinary intelligence. *See Coppes*, 78 N.W.2d at 24. In fact, in *Johnson v. Seipel*, 152 Wis.2d 636, 449 N.W.2d 66 (1989), a Wisconsin court specifically ruled that, in the context of a negligence action, it was not error for plaintiffs' counsel to argue to the jury that the defendant violated a city ordinance prohibiting the operation of boats at faster than "slow-no-wake" speeds, even if plaintiffs' counsel had been attempting to show that violation of the ordinance was negligence *per se. Id.* at 70–71.

As noted, the Complaint alleges that the "Slow-no wake" regulations "fail to provide law enforcement officers with sufficient stan-

3. N.D.Cent.Code § 20.1–01, –02 (1993).

4. They require travel "as slow as possible without losing steerage and so as to make the least possible wake." Haw.Admin.Code R. 13–240–5; Del.Code Ann. tit. 23, § B.R.4 (1995).

5. Mich.Comp.Laws § 324.80104 (1994); Tenn. Comp.R. & Reg. 1660–2–3–.07(2)(a); Tex.Admin.Code § 55.302 (1995); Ariz.Rev.Stat. § 5–

301, 15 (1995); Fla.Admin.Code Ann.R. 62N–24.00(2); Ind.Code § 14–8–2–129 (1995); 402 Ky.Admin.Regs. § 18.01.03(11)(F); Mass.Regs. Code. Cit. 323, § 2.07(3)(E); Mont.Admin.R. 12–320.1(c); Nev.Rev.Stat. 488.035, subd. 2 (1995); N.H.Code Admin.R. Saf–C 401.06; N.J.Admin.Code cit. 13, § 82–1.7(c); Ohio Rev.Code 1547.01(B)(21) (1994); Utah Code Ann. § 73–18–2(13) (1994).

dards to prevent arbitrary and discriminatory enforcement." *See Grayned,* 408 U.S. at 107, 92 S.Ct. at 2298. Here, although the regulations have been in effect for almost 20 years, Plaintiff does not even allege that the regulations have in fact been enforced in a manner which is arbitrary and discriminatory. The observations of the Supreme Court in *Village of Hoffman Estates,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982) are thus applicable. The Court concluded that "the language of the ordinance is sufficiently clear that the speculative danger of arbitrary enforcement does not render the ordinance void for vagueness." *Id.* at 503, 102 S.Ct. at 1196. As in that case, if it were made to appear that the regulations were in fact being enforced in a discriminatory manner, the Court would view the matter differently. Here, however, the Complaint makes only a facial attack on the speed regulations. Since the regulations are sufficiently clear and definite to a person of ordinary intelligence, and to common understanding, they are not susceptible to a facial attack based on concerns relating to the possibility that they will be enforced in an arbitrary manner. *Id.*

### Conclusion

The Court, being duly advised in the premises, upon all of the files, records and proceedings herein, now makes and enters the following Order.

IT IS HEREBY ORDERED that:

1. Defendant Rodney Sando's Motion to Dismiss [Docket Nos. 11 and 12] is granted;

2. Defendant George Meyer's Motion to Dismiss [Docket No. 22] is granted; and

3. Plaintiff's Complaint may be, and hereby is, dismissed with prejudice.